MARION COUNTY v. COLER et al.

(Circuit Court of Appeals, Fifth Circuit. December 11, 1894.)

No. 239.

**1. VALIDITY OF COUNTY BONDS—CONSTITUTIONAL LAW.**

The Texas statute of February 22, 1873, appointing three persons named as commissioners and trustees of Marion county, to procure suitable grounds and erect a courthouse and jail thereon, at an expense not exceeding $75,000, to be paid with county bonds, was not invalid as infringing the constitutional powers of the justices of the peace under section 20, art. 5, of the constitution of 1869, which declares that such justices shall constitute a court having jurisdiction similar to that theretofore exercised by the county commissioners, as may be provided by law.

**2. SAME—ISSUANCE OF BONDS—IRREGULARITIES—LEVY OF TAX.**

The fact that no tax was levied to pay interest and create a sinking fund before the issuance of the bonds, as required by section 3 of the act, did not render the bonds void, for the commissioners had full power to contract the debt, and the duty was imposed on the county government to execute the bonds and provide for the interest and sinking fund, and the failure of the county authorities to perform their duty at the time specified could not affect the validity of the bonds.

In Error to the Circuit Court of the United States for the Eastern District of Texas.

This was an action by W. N. Coler & Co., a firm composed of W. N. Coler, Sr., W. N. Coler, Jr., Bird S. Coler, and James W. Campbell, citizens of the state of New York, against Marion county, Tex., to recover some $50,000 alleged to be due upon certain bonds issued by that county. Of this amount, about $27,000 was claimed to be due on funding and refunding bonds, and about $32,000 on courthouse and jail bonds. A jury was waived by written stipulation, and the case tried by the court, which filed written findings of fact, with its conclusions of law thereon. Judgment was entered in favor of the plaintiffs for $59,757.43, with interest. Defendant brings error.

The courthouse and jail bonds sued upon were issued under an act passed by the legislature of Texas February 22, 1873. The provisions of this act which are material to the present controversy are found in sections 1, 2, and 3, which are as follows:

Section 1. Be it enacted by the legislature of the state of Texas: That J. T. Veal, J. Wilbourn Young and John B. Ligon, be and are hereby appointed

commissioners and trustees of the county of Marion, in the state of Texas, to procure grounds in a suitable location in the city of Jefferson, in the said county of Marion, upon which to erect a court house and jail for the use of said county, free of charge to said county. That said commissioners or any two of them may, after said grounds are secured, proceed as soon as practicable to cause said buildings to be erected for the use aforesaid, and to pay for the same with the bonds of said county as hereafter described, or to sell said bonds and pay for said buildings out of the proceeds arising from the sale of said bonds as to them may seem best.

Sec. 2. That when said grounds are selected by said commissioners, and the sum ascertained to be necessary to pay for said buildings, said commissioners shall cause to be printed or engraved the bonds of said county, to become due and payable twenty years after the date thereof, to bear interest at the rate of eight per cent. per annum from the date of said bonds, and to have coupons attached to each of said bonds for each year's interest thereon, to become payable to bearer on the 1st day of July of each year after the date of their issuance. The total amount of said bonds shall not exceed the sum of seventy-five thousand dollars, and they shall be issued in sums not less than one hundred nor more than one thousand dollars each, which said bonds when so printed or engraved, as aforesaid, shall be signed by the presiding justice of the peace of said county, and countersigned by the clerk of the district court of said county, and attested by the seal of said court, and shall then be numbered and registered by the said clerk in the records of said county and endorsed by any two of said commissioners, with a memorandum as follows, viz: "This bond is issued by the county of Marion, in the state of Texas, to pay for building a court house and jail for said county," which said endorsement shall be dated and signed by said commissioners or any two of them, and without said endorsements said bonds shall be null and void. In case of a failure of any of the commissioners to accept this trust or to act as such, any two of said commissioners may appoint a third one by recording said appointment in the records of the district court of said county, but if no two of them shall act as such then the county court shall appoint such number as may be required to fill the said commission.

Sec. 3. That when said bonds are signed and before they are issued the county or police court of said county shall levy and thereafter cause to be collected under general laws of this state, a poll tax of fifty cents on each male citizen of said county over twenty-one years of age, and a tax on all the real and personal property of the said county to raise a sum sufficient to pay the annual interest on said bonds, and a sinking fund of two per cent. to meet the principal thereof, which sum when so collected shall be used for no other purpose than that for which the same is collected. That said tax shall be annually thereafter levied and collected and appropriated as aforesaid. That in the month of June of each year said county or police court shall advertise in a newspaper published in said county, that they will on the 1st day of July of said year be ready to pay off and take up the amount of said bonds, which the funds on hand may meet, and if the holder or holders of any of said bonds shall present the same for payment in a sum sufficient to take up the funds on hand, said court shall purchase or pay off such an amount of the same as they may be able to do with the funds in their possession collected and set apart for this purpose, and if none of said bonds are presented the said court shall select by drawing from the whole number of outstanding bonds a number of the same of an amount equal to the sum of money then on hand, and shall publish in said newspaper for one month, that they are ready to pay off and take up the amount of bonds aforesaid, and shall designate the number of bonds which have been drawn as aforesaid, and notify holder or holders thereof to deliver the same for payment, and if the said bonds designated as aforesaid be not presented and paid off they shall cease to bear interest forever thereafter.

The findings filed by the court were as follows:

### Findings of Fact.

(a) Plaintiffs' petition was filed in the United States circuit court at Jefferson against defendant, Marion county, on the ———— day of June, 1892, upon a large number of overdue coupons or obligations, cut from three kinds of bonds

issued and sold by defendant, to wit, coupons cut from what are known as "Courthouse and jail bonds," made June 30, 1873, bearing 8 per cent. interest, and to run twenty years from date, interest payable annually on July 1st of each year; also from coupons cut from a bond known as "Marion county funding bond," issued March 1, 1880, to become due March 1, 1900, and bearing 6 per cent. interest from date thereof, and payable March 1st and September 1st of each year; also coupons cut from a bond known as "Marion county refunding bond," issued ───── day of May, A. D. 1882, and to fall due July 1, 1902, and bearing interest payable July 1st and January 1st of each year. (b) That said defendant, under pleas and answers, denied the constitutional and legal right of Marion county ·to issue and sell the courthouse and jail bonds; that there was a failure of consideration; that fraud entered into the transaction; and that the bonds and coupons were void in the hand of the plaintiffs; and, as to the funding bonds, that the same in part was the funding of county registered scrip, and that there was fraud in this transaction, and an overissue to the extent of $─────, and these bonds were void to that extent. (c) Plaintiffs demurred, denied allegations of defendant, pleaded acquiescence and ratification by defendant, and estoppel. (d) The court finds that the courthouse and jail bonds, to the extent of seventy-five thousand dollars, were issued by defendant county June 30, 1873, bearing 8 per cent. interest, payable annually on July 1st of each year, and these bonds were issued under and by virtue of an· act of the legislature approved February 22, 1873; that the said bonds were made and executed in strict conformity with said legislative act dated February 22, 1873; that at the January term of the commissioners' or county court of Marion county, 1874, an order was made and entered levying a tax to pay the interest and sinking fund of said bonds, and the taxes to pay the interest and sinking fund were collected until after 1876; that the funding bond was made and executed by defendant county under and by virtue of an act of the legislature approved March 25, 1879, and by orders of the commissioners' court of Marion county made in pursuance of said law, which authorized the issue thereof, and levied the tax for interest and sinking fund, and the said bonds funded indebtedness that existed prior to April 18, 1876, and included in part overdue coupons of the courthouse and jail bonds; that the greater part of the debt funded consisted of registered scrip, the amount of which the commissioners' court, on February 5, 1880, ascertained to be, and so declared in an order of said court that day, $39,767.86, bearing 8 per cent. interest thereon; that the refunding bond issued by Marion county was executed under two acts of the legislature, one approved March 25, 1879, and one the 6th day of April, 1881, and that the indebtedness refunded by said bonds had its inception and was created prior to April 18, 1876, and included in part coupons cut from the aforesaid courthouse and jail bonds; that the commissioners' court made and entered proper orders authorizing the issuance of said bonds, the levy and collection of taxes for payment of the interest and sinking fund of the same, in pursuance of said laws; that said funding and refunding bonds were made and executed in conformity to the said legislative acts authorizing them and the orders of the commissioners' court. (e) The court finds from the evidence that the three suits were filed against the defendant, Marion county, in the United States circuit court prior to 1886, by W. N. Coler, Jr., one of the plaintiffs in this suit; and the causes of action in said suits were in part coupons cut from the said courthouse and jail bonds, also those cut from said funding and refunding bonds, and a part of registered scrip; and that, pending said suits, said defendant county made a settlement thereof, and by decrees and orders of the commissioners' court of Marion county made and entered September 11 and October 15, 1886, fully recognized the validity of said indebtedness, and paid off same in compromise by the execution and delivery of new bonds; and that the plaintiffs purchased said coupons sued on for value before maturity bona fide, and without notice of any infirmities therein; that, by the acts of defendant county in the levy, collection of taxes, and payment of interest on said several bonds, and the orders and decrees of the commissioners' court in settlement of such bonded indebtedness from time to time, the defendant has acquiesced in, confirmed, and ratified the validity of all of several issues of bonds. (f) The court finds that the amount of principal and interest at 6 per cent. on all the coupons of the funding and refunding bonds introduced in evidence, figured up to September 28, 1893, to be $27,391.39,

with 6 per cent. interest thereon from that date; that the amount of principal and interest at 8 per cent. on all the coupons of the courthouse and jail bonds offered in evidence, up to September 28, 1893, is $32,366.04, with 8 per cent. interest thereon from date; and the judgment will be entered for the aggregate amount of $59,757.43, with 6 per cent. interest on $27,391.39, and with 8 per cent. interest on $32,366.04, from date.

### Findings of Law.

(1) That the courthouse and jail bonds were issued under the constitution of 1869, and full power was conferred by it upon the legislature to authorize counties to issue bonds in such manner as prescribed by law. (2) That the act of February 22, 1873, prescribing the manner and conferring the power upon trustees and Marion county to issue the courthouse and jail bonds, was not in conflict with the constitution of 1869. See Sp. Laws 1873, p. 65, c. 9. (3) The power to create agents by counties to make contracts for building or repairing public buildings had existed since the act of December 29, 1849. See Oldh. & W. Dig. art. 275. (4) By section 20, art. 5, Const. 1869, the legislature was clothed with authority to grant such powers as it saw fit to the commissioners' court to make and issue bonds. This court became the creature of the law prescribed. The legislature could increase or diminish its authority, or even take away all other powers than such as the constitution had prescribed. The court, therefore, concludes that the legislature had the power and authority to pass the act of 22d February, 1873, and confer the power of making and issuing the courthouse and jail bonds upon trustees appointed in the first instance by the legislature, and upon the officers of the county. The county had no power before this act to issue these bonds. Under this act, the power was granted under limitations to be exercised by the officers of the county and the trustees; and, the act having been pursued, the bonds were issued, and therefore legal and valid. (5) The court further finds that the funding and refunding bonds were made under the acts of March 25, 1879, and April 6, 1881, after the adoption of the constitution of April 18, 1876, but the indebtedness, funded and refunded, was created and existed prior to April 18, 1876; and that the rules of decision arising under the constitution of 1869 are applicable to these bonds; and that the same are legal and valid obligations. (6) The court further finds that, under the evidence, the defendant has acquiesced in and ratified the validity of the several issues of bonds in question; that for twenty years the defendant has recognized the courthouse and jail bonds as valid, enjoyed the proceeds, levied, collected, and paid taxes on the interest and sinking fund, funded and refunded, and settled the interest maturing thereon, and, by reason thereof, the defendant is estopped now from disputing their validity or repudiating their payment. (7) Finally, the law applicable to a bona fide holder, for value, of negotiable paper purchased before due, and without notice of any infirmities therein, entitles the plaintiffs to recover in this suit. These obligations in the hands of plaintiffs, as innocent holders for value, had the right to presume that the bonds were made in pursuance of the laws granting the power; and the defendant cannot be heard to question their validity in the hands of plaintiffs as such holders and owners. The court, therefore, finds the law applicable to the evidence to be with the plaintiffs, and entitles them to judgment, which is entered accordingly.

F. H. Prendergast, W. T. Armistead, and L. S. Schluter, for plaintiff in error, set up the following contentions:

(1) That this act is unconstitutional, because it gives to the commissioners named powers which by the constitution of 1869 (section 20) are vested in the court composed of justices of the peace. Section 20: "Justices of the peace shall have such civil and criminal jurisdiction as shall be provided by law. And the justices of the peace in each county or any three of them shall constitute a court having such jurisdiction, similar to that heretofore exercised by county commissioners and police courts, as may be provided by law. And when sitting as such courts the justice who resides at the county seat shall be the presiding justice." It was claimed that the effect of this provision was to invest the court of the justices with such jurisdiction as the county commissioners and police courts had theretofore possessed, and that prior to that

time such jurisdiction was prescribed by Pasch. Dig. Laws, art. 1055 (Hart Dig. art. 217), which reads as follows: "The county courts may appoint an agent or agents to make any contract on behalf of the county for the erection or repair of any county building and to superintend their erection or repairing or for any other purpose authorized by law and the contracts or acts of such agent or agents duly executed and done for or on behalf of the county and within his powers, shall be valid and effectual to bind such county to all intents and purposes." Re-enacted under the constitution of 1869 (Act Aug. 13, 1870; 2 Pasch. Dig. 6128).

(2) That, even if the court should find that the law was constitutional, the bonds must be held to be void, because the law was not complied with in issuing them. The act provides (section 3) "that when said bonds are signed, and before they are issued," the county court shall levy a tax to pay the interest and 2 per cent. sinking fund every year. But it was proved and found by the court that the courthouse and jail bonds were issued June 30, 1873, and that no tax was levied to pay the bonds until January, 1874.

(3) That the fact that the county has levied taxes, and paid interest on the bonds, and created a sinking fund, did not estop it from denying their validity.

W. S. Herndon and Ben B. Cain, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges, and BRUCE, District Judge.

McCORMICK, Circuit Judge. The debt which is the consideration of the bonds involved in this case was contracted before the adoption of the constitution now in force in Texas. At the time it was contracted, there was no provision in the constitution of the state similar to section 9 of article 8, or to sections 5 and 7 of article 11, of the constitution adopted in 1876. The constitution being silent, the legislature had power to provide, in its discretion, for the taxing of property in the state, and for the distribution and appropriation of the taxes to be raised. New Orleans v. Clark, 95 U. S. 644.

The contention that the enabling act violated fundamental principles, and is therefore invalid, does not seem to be supported by authority. The contention that the enabling act of February 22, 1873, required provision to be made for the payment of the interest, and creating a sinking fund, before the contraction of the debt and the execution of the bonds, does not appear to be supported by the terms of statute. On the contrary, it appears that the authority given the specially named commissioners to contract the debt was full and complete, and the duty was imposed on the county government to execute the bonds to meet the debt, and to provide for the interest and required sinking fund before issuing the bonds. The power to provide the courthouse and jail is not made contingent on any action by the county. The contractor who erected the buildings might be paid in the bonds of the county, or out of the proceeds of the sale of its bonds; but the county could not, by its refusal to execute the bonds, or by its refusal or neglect to provide for the levy and collection of a tax sufficient to meet the interest and sinking fund, defeat the execution of the power conferred by the statute to provide a courthouse and jail for the county. These necessary public grounds and buildings were secured; the bonds were executed and issued;

and at the January term, 1874, of the proper court of the county an order was made and entered levying a tax to pay the interest and sinking fund, and the tax was collected annually for several years thereafter. We see no ground to question the validity of the bonds.

The judgment of the circuit court is affirmed.