## THE STATE ex rel. CITY OF CARTHAGE v. JOHN P. GORDON, State Auditor.

### In Banc, March 9, 1909.

1. **WATERWORKS BONDS: Special Election: Notice.** The statute provided that, for the purpose of testing the sense of the voters upon the proposition to issue the bonds of the city to be used in the construction of a city waterworks system, the council should order a special election, and give notice by publication for fifteen days in a newspaper published in the city. The ordinance required notice by publication in a newspaper and by posting in three public places in each ward, and no notice was posted in the wards. *Held*, that the statutory notice was sufficient, and that part of the ordinance that required the notices to be posted in each ward was unauthorized and invalid.

2. ————: **Interest: "Not Exceeding," Etc.** The ordinance provided that the bonds should bear interest at the rate of five per cent per annum and the published notice said they would bear "a rate of interest not exceeding five per cent per annum," and by the statute the bonds were to bear "interest from date not exceeding eight per centum per annum." *Held*, that the substitution of an indefinite rate of interest in the notices of "not exceeding five per cent per annum" did not make the election void, but the notice conformed to the statute, which controls.

3. ————: **Redemption: At Option of City: Waiver.** The bonds were all payable in twenty years, "with option of the city to pay $55,000 of said bonds in five years, $75,000 ten years after date, and $95,000 fifteen years after date." The statutes required the bonds issued under its authority to be "payable in not less than five nor more than twenty years from the date thereof, at the option of the city." *Held*, that the words "at the option of the city" were intended for the benefit of the city, and could be waived, and the bonds are not void because they were not written into the contract.

4. ————: **Interest: Change of Rate.** The city council has the authority to change the rate of interest on the bonds (in this case from four and one-half to five per cent), within the statu-

tory restriction and within the proposition approved by the votes of the people, at any time before any of the bonds are sold.

5. ————: **Provision for Interest and Sinking Fund: Suspended by Resolution.** Where the city council in due time enacted an ordinance declaring the proposition to issue the bonds carried at the special election and providing for the levy of a tax sufficient to pay the interest as it falls due and also to constitute a sinking fund for the payment of the principal of the bonds, that ordinance is not repealed by a subsequent resolution directing that that part of the ordinance be suspended or not enforced. The ordinance still remains in force, such resolution being a nullity. And consequently it cannot be said that no provision had been made for the collection of an annual tax sufficient to pay the interest and to create a sinking fund.

6. ————: ————: ————: **Mandamus.** But even if the council fails to provide a levy sufficient to pay the annual interest and a proportionate part of the sinking fund, that does not affect the validity of the bonds. The provision of the Constitution is self-enforcing, and the council may be compelled by mandamus to make a levy, and if there is an accumulation of principal and interest unpaid, the council may by mandamus be compelled at any time to make one levy *en masse* sufficient to pay all principal and interest past due.

7. ————: **Unreasonable Delay.** Absent any showing that the voters of the city have revoked or intended to revoke the authority given to the city by an election held on March 12, 1907, to issue the bonds, the court will not hold that, because the bonds were not presented to the State Auditor until November, 1908, the time which had elapsed between the election and presentation was so long and unreasonable as to justify him in refusing to register them.

8. ————: **Excessive Indebtedness.** The existing indebtedness of the city was $40,534.37, the proposed issue of waterworks bonds to construct a system to be owned by the city was $220,000 and the assessed valuation of the taxable property within the city prior to the issuance of the bonds was $3,430,051. *Held*, that a ten per cent maximum indebtedness, as a calculation will show, was not exceeded by the waterworks bonds, and they added to the existing indebtedness do not exceed the maximum indebtedness limited by the Constitution. The Constitution does not mean that waterworks bonds must not in any event exceed five per cent of the assessed valuation of taxable property within the city.

## Mandamus.

PEREMPTORY WRIT AWARDED.

R. A. Hockensmith and Perkins & Blair for relator.

(1) Notice of the election given for fifteen days previous to such election by publication in a newspaper published in the municipality is in compliance with the statute (R. S. 1899, sec. 6351), and is therefore sufficient. Where the statute is complied with, the notice is sufficient. Hamilton v. Detroit, 85 N. W. 933; sec. 6351, supra. (2) The rate of interest is left to the discretion of the council by R. S. 1899, sec. 6353, to be fixed at "not exceeding eight per cent per annum," and the notice of election fixing the rate at "not exceeding five per cent per annum" is within the statute and sufficient. The proposed bond issue is at the rate of five per cent per annum and is within the limit of the statute, which is controlling. Hamilton v. Detroit, supra; Cleveland v. Calvert and City of Spartenburg (S. C.), 31 S. E. 872; Daily v. Columbus, 49 Ind. 169; Gibbons v. Mobile, 36 Ala. 410; Bank v. Omaha, 18 N. W. 63; Hillsboro Co. v. Henderson, 33 So. 997. (3) (a) The city council, at the time of the issuance of the bonds, directed that a tax levy sufficient to pay the interest and sinking fund be made, and this complied with the constitutional requirements in that regard. The mandatory provision of the Constitution (art. 10, sec. 12a), with reference to waterworks bonds has been fully complied with by relator. At the time the council by ordinance declared the proposition carried it, by section 3 of the same ordinance, provided for the levy of a tax in pursuance of the constitutional provision. Subsequently the rate of interest was increased to five per cent and thereupon provision was made for a levy sufficient to cover the increased interest. The regular annual appropriation ordinance for 1908, passed August 7, 1908, by section 5 provided a levy to pay semiannual interest, and the amount realized therefrom ($13,720.20) is more

than sufficient to pay the semiannual interest ($5,500) and semiannual portion of the sinking fund ($5,500). It would doubtless have been better to have provided at that time a levy sufficient to pay the annual interest and sinking fund, but that this was not then done does not invalidate the bonds, since the proceedings had at most were but the levy of an insufficient amount, and the levy and collection of an amount sufficient to pay the entire interest and sinking fund can be made *en masse* at any time under authorities cited in the next paragraph hereof. The council did by resolution direct that section 5 of Ordinance 1018 be not enforced, but such a resolution could not, nor did it attempt to, repeal the levy, so that in contemplation of law the levy remains as made, such a resolution being a mere nullity, as has been directly held in this State. Young v. St. Louis, 47 Mo. 492. (b) But even if the council has made an insufficient levy, or had failed to make any levy whatever, the bonds would not be invalidated for that reason, since under our Constitution such levy can be made at any time and if the city fails in its duty in this regard, mandamus will lie and such levy can be directed made at any time *en masse* for all past due interest and principal. East St. Louis v. Amy & Co., 120 U. S. 600; East St. Louis v. People ex rel., 17 N. E. 449; Marion Co. v. Coler, 67 Fed. 64; Wade v. Travis Co., 174 U. S. 499; Cleveland v. Calvert and City of Spartenburg, supra. (4) The present indebtedness of the city being but $40,534.37, and the assessed valuation prior to the issuance of the bonds being $3,430,051, the constitutional limitation of five per cent for general municipal purposes and five per cent additional for waterworks (at ten per cent maximum of indebtedness) is not exceeded by the proposed issue of $220,000 waterworks bonds. State ex rel. v. Wilder, 197 Mo. 1; State ex rel. v. Allen, 183 Mo. 283; Metcalf v. Seattle, 25 Pac. 1010; Rochester v. Quintard (N. Y.), 32 N. E. 760.

*Elliott W. Major,* Attorney-General, *C. G. Revelle,* Assistant Attorney-General, and *C. F. Mead* for respondent.

(1) Did the council act within its constitutional and charter powers in ordaining that not only the statutory but additional and further notice be given in order that the public might be fully advised, and the sense of the voters properly tested? By virtue of the power given such cities by the organic law of the State and by statutory transmission, it had the power to so provide, and thus providing its ordinance became of the same force and effect and of equal dignity with an act of the Legislature. Sec. 7, art. 9, Constitution of Mo.; secs. 5834, 5872, R. S. 1899; Sanders v. Railroad, 147 Mo. 426; St. Louis v. Foster, 52 Mo. 516; State v. Kessels, 120 Mo. App. 233; St. Louis v. Bentz, 11 Mo. 62; State v. Cowan, 29 Mo. 330; St. Louis v. Schoenbusch, 95 Mo. 618; Ashville v. Webb, 134 N. C. 75; Bowen v. Mayor, 79 Ga. 714; State ex rel. v. White, 162 Mo. 533; St. Louis v. DeLassus, 205 Mo. 578. (a) A general enactment of the General Assembly granting to cities of a certain class certain powers is the charter of these cities, and whatever is contained therein has the full force of a legislative enactment. State ex rel. v. Telephone Co., 189 Mo. 99; St. Louis v. Foster, 52 Mo. 513; Railroad v. Railroad, 105 Mo. 562; Jackson v. Railroad, 118 Mo. 199. (b) The Legislature has said the council shall have no power to submit a proposition unless it shall give not less than fifteen days' notice by publication. This is a limitation and the Legislature is satisfied to leave the matter to the municipal powers, if the statutory notice is given, but it does not compel the municipal authorities to be satisfied with this notice. State ex rel. v. White, 162 Mo. 533; Luce v. Fensler, 52 N. W. 517; Bowen v. Mayor, 79 Ga. 709; Vance v. Ansill, 45 Ark. 400. The matter of giving additional

notice is one of the purely local concern, affecting only the interest of the taxpayers of Carthage, and, in the absence of statutory prohibition, the council had the power to require that more complete and perfect information be given the voters if they ''deemed it expedient for the good government and welfare of the city, and its trade and commerce.'' Water Co. v. Lebanon, 163 Mo. 260; Paving Co. v. French, 158 Mo. 534; Railroad v. Railroad, 105 Mo. 562; Jackson v. Railroad, 118 Mo. 199. (2) Section 5 of the ordinance referred to declares that the notice ''shall specify the rate of interest.'' Instead of this the notice given provided that the interest should be ''a rate of interest not exceeding 5 per cent per annum, payable semiannually.'' A mere statement that the interest to be paid is not to exceed a stated rate is not a compliance with the above requirement, as has been uniformally held in all the adjudications. Athens v. Hemerich, 89 Ga. 674; Thompsonville v. Light Co., 50 S. E. 169; Bowen v. Mayor, 79 Ga. 709; Mercer County v. Railroad, 27 Pa. St. 389; Staven v. Genoa, 23 N. Y. 449; Smith v. Dublin, 113 Ga. 833; State ex rel. v. School District, 15 Mont. 133; Elyria Water Co. v. City, 57 Ohio St. 374; Railroad v. Petersboro, 49 N. H. 281; Railroad v. Wells, 39 Ind. 539; State ex rel. v. Roggen, 22 Neb. 118; State ex rel. v. Woodson, 41 Mo. 230; Railroad v. Apperson, 97 Mo. 300. (3) Neither the ordinance, proclamation nor notice designated the newspaper in which the notice should be printed, nor did the printed notice recite the fact that the ordinance authorizing the election had been theretofore enacted. This, in similar matters, has been held to be fatal. State v. Baldwin, 109 Mo. App. 573. (4) Section 12, article 10, of the Constitution is an absolute prohibition against the incurrence of an indebtedness until provision is made for the collection of an annual tax sufficient for the purposes therein mentioned. Almost two years have now elapsed, and yet

no adequate provision for that purpose has been made. This constitutional requirement having been ignored, the bonds should not be registered. State ex rel. v. Allen, 183 Mo. 299; State ex rel. v. Railroad, 149 Mo. 645; Wilkens v. Wainsboro, 116 Ga. 359; State v. Water Works Co., 106 Ga. 732. The conduct of the council and the acquiescence therein by the voters indicates that instead of intending to comply with the provisions of the law, and carry out the bond issue, the whole project had been abandoned some time ago, and the right to issue the bonds thereby forfeited. This suggestion seems of peculiar force when it is considered in connection with relator's delay in exercising its alleged authority to issue the bonds in question. It is clear that the vote must lose its authority if not acted upon within a reasonable time, as it cannot be successfully argued that the voters intended giving their public servants a roving commission authorizing them to act without limitation, to abandon the project one year and revive it the next. The delay, when considered with relator's other conduct, is unreasonable. (5) The assessed valuation, as equalized for the purpose of taxation of the relator, was, at the time mentioned, as follows: For 1906, $3,306,934; for 1907, $3,430,051. Computing the amount of the indebtedness which may be incurred as five per cent of the taxables, the total amount of the bonds which the city could issue would be $171,507.55; the amount of this issue is $220,000. The bonds are, therefore, prohibited by section 12 of article 10 of the Constitution of Missouri, unless the power of relator is enlarged by the amendment of 1902, the same being section 12a of article 10. In our opinion, such a construction should not be placed upon said amendment, but said amendment should be construed to restrict the debt for water and light to five per cent of the taxables, leaving the rest of the city's contractual power for other corporate purposes.

BURGESS, J.—This is an original proceeding by mandamus to compel the respondent to register waterworks bonds of the relator, the city of Carthage, Missouri, in the sum of $220,000, dated April 1, 1908, and bearing interest at the rate of five per cent per annum, payable semiannually on the first day of April and October in each year, said bonds to wholly mature within the period of fifteen years.

The relator is a city of the third class, having a population of about twelve thousand, and its present indebtedness, exclusive of the bond issue in controversy, is $40,534.37.

On the 28th day of January, 1907, the city council of said city passed an ordinance, numbered 873, providing for an election to authorize the incurring of an indebtedness of $220,000 to be used for the purpose of erecting a waterworks system, and to authorize the issuance of bonds in that amount to bear a rate of interest not exceeding five per cent, and the levy of a tax to pay the interest thereon, and to constitute a sinking fund for the payment of the principal; said bonds to be payable in twenty years from date, with option of the city to pay specified amounts in five, ten, and fifteen years.

Section 5 of said ordinance provided that the mayor give at least fifteen days' notice of said election, and the proposition to be submitted thereat, by proclamation, to be published in the paper doing the city printing, and by notices posted in three public places in each ward of the city, specifying the amount of the debt, the length of time for which said bonds should run, the rate of interest, the object and purpose thereof, and the day on which said election should be held and the place of holding the same.

In due time a proclamation was issued by the mayor giving notice of the election, and it was published in the Carthage Evening Press, which was then doing the city printing, but no notice or proclamation

was posted in any of the wards of the city, although such was provided for by said ordinance. Said published notice recited that the bonds were to bear "a rate of interest not exceeding five per cent per annum, payable semiannually," but it did not recite the fact that an ordinance authorizing the election had theretofore been passed. The election was held March 25, 1907, in accordance with said notice, and the proposition submitted was favored by more than two-thirds of the votes cast.

On July 22, 1907, the city council passed an ordinance (No. 909), authorizing and directing the execution of $220,000 waterworks bonds bearing interest at the rate of four and one-half per cent per annum, payable semiannually, providing for a levy of taxes sufficient to pay the interest and to provide a sinking fund for the payment of the bonds; and on the same day another ordinance was passed providing for a tax levy of seventy-five cents on each one hundred dollars assessed valuation, for the purpose of providing for the interest and the sinking fund.

Thereafter, on December 24, 1907, the council adopted, and the mayor approved and signed, the following resolution:

"On motion it was ordered that the collection of tax for payment of interest and principal of waterworks bonds be stopped, and that repayment be made to such persons as have paid such tax of the amount paid thereof, for the reason that said bonds have not been sold and issued."

On February 24, 1908, an ordinance was passed amending the original ordinance (No. 873), which amendment directed the issuance of $220,000 bonds bearing date April 1, 1908, said bonds to bear interest at the rate of five per cent per annum, payable semiannually, and on July 27, 1908, the council adopted another amendment providing for a tax levy sufficient to meet the payment of the interest at the increased

rate of five per cent, and also the sinking fund. On August 7, 1908, the council passed a general levy ordinance (No. 1018), section 5 of which provided for a levy of forty cents on each $100 assessed valuation, for the purpose of creating a sinking fund and paying the semiannual interest on said bonds, but, again, on September 18, 1908, said city council adopted resolution No. 222, directing that said levy be not enforced for the reason that said bonds had not been sold.

The bonds were issued under date April 1, 1908, and thereafter, in November, 1908, they were presented to the State Auditor for registration, who refused to register them. In his return, the respondent, as grounds for his refusal to register the bonds, assigns the following:

First. Because no notices of the election were posted in the various wards of the city of Carthage, although the ordinance authorizing the election specifically prescribed that such notices be so posted.

Second. Because the notice published in the newspaper did not specify the rate of interest that the bonds should bear, but instead provided that the interest should be "a rate of interest not exceeding 5 per cent per annum, payable semiannually," although the ordinance specifically required that the rate of interest should be specified.

Third. Because neither the ordinance, proclamation nor notice designated the newspaper in which the notice should be published, nor did the notice recite that an ordinance authorizing the special election had been theretofore enacted.

Fourth. Because no provision was made at any time for the collection of an annual tax sufficient to pay the interest on the indebtedness as it falls due, and to constitute a sinking fund for the payment of the principal, although section 12, article 10, of the Constitution specifically requires same.

Fifth. Because relator had practically abandoned the issue of the bonds before presenting same to be registered, and because the delay in so presenting same to respondent was unreasonable, and cannot now be said to represent or declare the will of the voters.

Sixth. Because the assessed valuation of the taxable property of relator was at the time of the election $3,306,934, and by reason thereof relator was authorized by the Constitution to issue bonds in an amount not exceeding $171,507.55, whereas the amount of this issue is $220,000.

In its petition the relator states that the assessed valuation of the taxable property of the city, in the year 1906, for the taxes of 1907, was $3,306,934, and that the assessed valuation in 1907, for the taxes of 1908, was $3,430,051.

Relator filed its motion in this cause for judgment on the pleadings, notwithstanding the respondent's return, and insists that, although section 5 of ordinance No. 873 provides for notice not only by publication in a newspaper but also by notices posted in three public places in each ward of the city, notice of the election, given for fifteen days previous to such election, by publication in the newspaper published in the municipality, was a compliance with the statute, section 6351, Revised Statutes 1899, and therefore sufficient, and that the provision of the ordinance requiring the posting of notices in three public places in each ward of the city, in addition to the statutory notice, was superfluous and unnecessary to be complied with.

Section 6351, Revised Statutes 1899, provides: "For the purpose of testing the sense of the voters of any incorporated city, town or village, upon a proposition to become indebted or to increase the debt thereof, . . . the council, trustees or other proper au-

217 Sup—8

thority of such municipality shall order a special election to be held, of which they shall give not less than fifteen days' previous notice, by publication in some newspaper published therein, or if there be no such newspaper, then by posting up ten written or printed hand-bills in ten public places in such city, town or village.''

It will be observed that this section requires the publication of the notice of election in a newspaper published in the municipality and, in the absence of such newspaper, then by posting up ten written or printed hand-bills in ten public places in such city, etc.

The statute of Minnesota is substantially the same as ours. It provides that every village in that State may issue its bonds for the purpose of raising money for any lawful public improvement by conforming to the provisions of the law, which specifies the proceedings to be had for such purpose, and provides that where the village council does not act of its own motion, a petition, signed by twenty-five voters and freeholders residing within the village, requesting the council to make the improvement designated therein, may be presented, and that upon the presentation of such petition, such council shall cause the proposition embodied therein to be submitted to the electors at the next annual election, or at a special election, as the council shall by resolution designate. In the case of Hamilton v. Village of Detroit, 83 Minn. 119, the village council of Detroit, upon petition duly presented, called a special election for the purpose of voting upon a proposition for the construction and equipment by the village of an electric light plant. The resolution calling the election provided that ten days' notice of the same should be given by posting notices in three of the most public places in the village, and also by publishing the resolution. The notices were duly posted as required, but the resolution

was not published ten days before the election. It was held that the failure to publish the resolution ten days before the date set for the election was not fatal to the validity thereof, as the statute was fully complied with by the posting of the notices, and that the village council could not by resolution or otherwise add to or take from the statutory requirements.

As section 6351, supra, only requires fifteen days' previous notice of the election, by publication in a newspaper published in the city, which was done, that part of section 5 of said ordinance, requiring notices to be posted in three public places in each ward of the city, was unauthorized and invalid, and the notice, as published, well enough.

Respondent contends that as the ordinance in question specified the rate of interest that the bonds should bear, the substitution of an indefinite rate of interest, "not exceeding 5 per cent per annum," in the published notice of election was not a submission to the people of the question proposed by the ordinance, and that the election was therefore void. In support of his contention, respondent cites a number of cases from other States, but none of which, we think, are in point. Thus, in State of Nebraska ex rel. v. Roggen, 22 Neb. 118, a proposition was submitted to the voters of Butler county to authorize the issuance "to the Lincoln & Northwestern Railroad Company, or the Blue Valley & Northwestern Railroad Company, fifty-three thousand dollars of the coupon bonds of Butler county," etc. It was held that as the Constitution of that State required the proposed donee to be specifically designated, and as the proposition submitted to the voters failed to state what particular railroad the aid should be given to, but stated two railroads in the alternative, such proposition, even if adopted by the legal voters, was ineffectual to authorize the issuing of the bonds.

In the Florida case (Hillsborough County v. Henderson, 33 So. 997), cited by respondent, the statute required that the proposition to be submitted should specifically state the rate of interest.

In the case of City of Athens v. Hemerick, 89 Ga. 674, the statute required that the published notice of election should specify the amount of bonds, for what purpose and what interest they should bear.

In Mercer County v. Railroad, 27 Pa. St. 389, the statute authorized subscription only on the recommendation of the grand jury, who should specify in their recommendation the amount of the subscription advised, but they recommended a subscription of ''not more than $150,000.'' The court held that this did not comply with the statute, which required the amount to be specified.

In Starin v. Town of Genoa, 23 N. Y. 439, the statute authorized the town officials to subscribe for stock in a railroad company, and pay cash therefor at the par value of the stock, to raise which money bonds might be issued and sold, or a direct tax might be levied, as by a vote of the public might be determined. The town officials, instead of selling the bonds to raise the money, gave the bonds to the railroad company at par for the par value of the stock. *Held,* they could not do so, not being authorized so to do by the statute.

In the Montana case (State ex rel. v. School District No. 1, 15 Mont. 133), the statute required the notice to the voters to state that it was proposed to issue bonds to a certain amount, bearing a certain rate of interest, payable and redeemable at a certain time and place, and for certain purposes. The notice of election stated only the amount of the bonds and the purposes for which they were to be issued, omitting interest, time of payment, etc. *Held,* this was insufficient.

In Gas & Water Co. v. City of Elyria, 57 Ohio St. 374, the issuance of the bonds was enjoined on several grounds, and as being in conflict with the statute; but the question before us was not in that case. The same may be said of the case of Railroad v. Peterborough, 49 N. H. 281, cited by respondent.

In the case of Railroad v. Wells, 39 Ind. 539, a petition by the voters and freeholders of Grant county to the board of commissioners of said county, prayed said board to make an order for an election to determine whether a tax of a certain per centum should be levied upon all the taxable property in the county, to aid a certain railroad company in constructing a railroad through the county. The statute required that the petition should specify the amount to be appropriated, and not a per centum upon the taxable property, and the court held the petition insufficient.

It will be seen that the questions decided in the above cases were all controlled by statutory provisions, which is not the case here, the question here presented having to do with a city ordinance and the notice of election published thereunder; hence, the authorities cited are not controlling.

By our statute (section 6353, R. S. 1899), it is provided that, ''Upon the result of such election being certified by the judges thereof to the council, trustees, or other proper officials of such city, town or village, such council or trustees, if the proposition for the incurring or increasing of such debt be carried, may by proper ordinance declare such result, and cause bonds of such city, town or village to be issued, covering the amount of such debt,  .  .  .  with interest from date not exceeding eight per cent per annum, payable semiannually; which bonds shall have interest coupons attached to conform to the face of the bond.''

The published notice of election recited that the bonds were to bear a rate of interest "not exceeding 5 per cent per annum," which was within the restriction of the statute, and although the notice did not comply with the ordinance, which provided that such notice should specify the rate of interest which the bonds should bear, it conformed to the statutory provision, which controls.

It is said for respondent that the bonds presented to the auditor for registration are not such bonds as are authorized by the statutes. The total amount of the issue presented to the auditor was $220,000, all payable in twenty years, "with option of the city to pay fifty thousand dollars of said bonds in five years after date, seventy-five thousand dollars ten years after date, and ninety-five thousand dollars fifteen years after date."

Section 6353, supra, as amended by the Act of 1901 (Laws 1901, p. 83), requires that the bonds issued under its authority shall be "payable in not less than five nor more than twenty years from the date thereof, at the option of the city." It is insisted that the words "at the option of the city" should be written into the contract. Evidently, this option is intended for the benefit of the city, and might be waived, as was done, without affecting the validity of the bonds.

It is also contended that the auditor was justified in refusing to register the bonds on the ground that no provision had been made for the collection of an annual tax sufficient to pay the interest and sinking fund demand. The mandatory provision of the Constitution (art. 10, sec. 12a), with reference to waterworks bonds, which declares that the municipality, "before or at the time of incurring such indebtedness, shall provide for the collection of an annual tax . . . sufficient to pay the interest on such indebtedness as it falls due, and also to constitute a sinking fund for the payment of the principal thereof," was complied

with, the record disclosing that the council in due season adopted an ordinance declaring the proposition carried, and providing for the levy of a tax, in pursuance of the constitutional provision. Subsequently the rate of interest was increased from four and a half to five per cent, and provision was made by ordinance for a levy sufficient to cover the increased interest. The council undoubtedly had the authority to change the rate of interest upon the bonds, within the statutory restriction, and within the proposition voted upon, at any time before any of the bonds were sold, for until then no vested interest could be acquired therein.

It seems that the regular annual appropriation ordinance (No. 1018), for 1908, passed August 7, 1908, provided by section 5 thereof for a levy to pay the *semiannual* interest on the bonds and the *semiannual* portion of the sinking fund, and that the amount realized from such levy ($13,720) was more than sufficient for such purposes, the semiannual interest and the semiannual portion of the sinking fund each amounting to but $5,500. While it might have been better, as the relator concedes, to provide at the time for a levy sufficient to pay the *annual* interest on the bonds and proportionate part of the sinking fund, we do not think that the failure to so provide had the effect to vitiate the bonds. Under our Constitution such levy may be made at any time, and if the city fails of its duty in this regard, it may be compelled by mandamus at any time to make such levy *en masse* for all principal and interest past due.

A question similar to that under discussion arose in the State of Illinois, and was passed upon by the Supreme Court of the United States in East St. Louis v. Amy, 120 U. S. 600. The Constitution of Illinois contains a provision (art. 9, sec. 12) substantially the same as section 12a, article 10, of the Missouri Constitution, above quoted. After the adoption of the Illinois Constitution, in 1870, the city of East St. Louis

issued bonds, and by the same ordinance made provision for the levy and collection of a special annual tax sufficient to meet the interest and principal as they respectively fell due, but the city authorities, believing that the city charter by one of its provisions prevented so large a levy, never did in fact levy a sufficient tax for such purposes. In passing upon the question, the Supreme Court of the United States held that the constitutional provision above referred to was self-enforcing, and said: ''In this case the Constitution limited the power of the Legislature of Illinois in respect to the grant of authority to municipal corporations to incur debts, but it declared in express terms that, if a debt was incurred under such authority, the corporation should provide for its payment by the levy and collection of a direct annual tax sufficient for that purpose. Under this provision of the Constitution, no municipal corporation could incur a debt without legislative authority, express or implied, but the grant of authority carried with it the constitutional obligation to levy and collect a sufficient annual tax to pay the interest as it matured and the principal within twenty years. . . . It was made by the people a part of the fundamental law of the State that every debt incurred thereafter by a municipal corporation, under the authority of law, should carry with it the constitutional obligation of the municipality to levy and collect all the necessary taxes required for its payment.''

Passing on the question whether the court ''could compel a levy *en masse* to pay the whole debt and interest, when the Constitution only required the council to provide for the collection of an annual tax to pay the interest as it falls due, and the principal within twenty years,'' the court, in the course of the same opinion, said: ''It only remains to consider the objection that a tax cannot now be levied sufficient in amount to pay the entire judgment at once. The judg-

ment is for the entire amount in arrear, and a small amount of principal. The law required a tax to be levied annually sufficient to pay all interest as it accrued, and the principal when due. This was neglected, and consequently there is now a large accumulation of a debt which ought to have been paid in installments. Thus far the inhabitants have been allowed to escape taxation at the times it ought to have been laid, and to which they were under constitutional obligations to submit. The accumulation of the debt was caused by their own neglect as members of the political community which had incurred the obligation. Such being the case, we see no reason why it was not in the power of the court to order a single levy to meet the entire judgment which was for all past due obligations. . . . The constitutional obligation of the city was not fully met by providing, when the debt was incurred, for the levy and collection of the necessary tax. It required as well the actual levy and collection when needed to pay the debt. This is an obligation that can be enforced by mandamus after judgment caused by a neglect to meet its requirements.''

That case was followed by the Supreme Court of Illinois, in East St. Louis v. People ex rel., 124 Ill. 655, in which it is ruled that the constitutional provision is self-enforcing, and that the levy and collection of a tax to provide a sufficient fund to pay both principal and interest of bonds, as in the case at bar, can and will be enforced by mandamus, such action being authorized by the constitutional provision regardless of whether the municipality has or has not made a levy and collection of taxes to pay the interest and provide a sinking fund for the bond issue.

Where an act provided ''that when bonds are signed and before they are issued'' the county court shall levy a tax to pay the interest and two per cent sinking fund every year, and no tax was levied until

January, 1874, to pay bonds which were issued June 30, 1873, it was held that the failure to make provision before the issuance of the bonds for the levy and collection of a tax to pay the interest and create a sinking fund did not invalidate the bonds. [Marion Co. v. Coler, 67 Fed. 60; Wade v. Travis Co., 174 U. S. 499.] Substantially the same rule is announced in Cleveland v. Calvert and City of Spartanburg (S. C.), 31 S. E. 871.

While the council did by resolution direct that section 5 of said ordinance 1018 be suspended or not enforced, it was not sought thereby to repeal the levy; consequently it remains in force as made, such a resolution being a nullity, as was held in a similar case. [Young v. St. Louis, 47 Mo. 492.]

There is nothing disclosed by the record which indicates, or from which it can be conclusively presumed, that the voters of the city have revoked or intended to revoke the authority given by the election of March 12, 1907, to issue the bonds in question, or which would justify this court in holding that the time which has elapsed between the election and the presentation of the bonds for registration is so unreasonable as to justify the auditor in refusing to register them.

It seems that the present indebtedness of the city is $40,534.37, and that the assessed valuation of its taxable property prior to the issuance of the bonds was $3,430,051. Therefore, as calculation will show, the constitutional limitation of five per cent for general municipal purposes and five per cent additional for waterworks (a ten per cent maximum of indebtedness), is not exceeded by the proposed issue of $220,000 waterworks bonds. Respondent contends that waterworks bonds must not in any event exceed a sum equal to five per cent of the assessed valuation of the city, regardless of whether or not the present municipal indebtedness reaches the five per cent maximum

fixed by section 12, article 10, of the Constitution. This contention is not admissible in view of the decision of this court in State ex rel. v. Wilder, 197 Mo. 1. In that case the actual indebtedness was $30,700, and five per cent of the assessed valuation was $123,025. The waterworks bond issue ($110,000) added to the previous actual indebtedness of $30,700, amounted to $140,700, but it was held that the bonds were valid, although the then indebtedness would be $16,675 over the first five per cent.

The Constitution of the State of Washington provided a one and one-half per cent assessment limitation on indebtedness, which could be increased by vote to five per cent for general municipal purposes, and further increased an additional five per cent for waterworks purposes. The question of the validity of bonds was raised, and the court held that as water, sewers and lights were for municipal purposes, the expense of construction and maintenance of waterworks could be paid either out of the current revenue or the first five per cent of indebtedness, as well as out of the additional five per cent specifically authorized for that purpose. [Metcalf v. City of Seattle, 25 Pac. 1010.] The court further said: "The three-fifths majority having been obtained, there is no further obstacle to the issuance of such bonds, although they amount to more than five per cent of the taxable property of the city, provided, with their issuance, the total indebtedness of the city is not increased to more than ten per cent of such property."

The New York Constitution limited municipal indebtedness for any purpose to an amount, including existing indebtedness, not more than ten per cent of the assessed valuation of the real estate, except that an additional indebtedness might be incurred for waterworks purposes. Held, in the case of City of Rochester v. Quintard, 32 N. E. 760, that the city is not required to avail itself of the exception where its

total indebtedness, with the addition of the proposed bonds, does not reach the prescribed limit of ten per cent.

We find no good and sufficient reason set up by respondent in his return to the alternative writ to justify his refusal to register the said waterworks bonds of relator.

Relator's motion for judgment on the pleadings is sustained, and a peremptory writ of mandamus awarded, commanding the respondent, the said State Auditor, to register the said described bonds of said city of Carthage in a book or books provided therefor in his said office, and to certify by indorsement on said bonds that all of the laws of this State have been complied with in the issuance of said bonds, and that the conditions of the contract under which the said bonds were ordered to be issued by the city of Carthage have been complied with; and it is further ordered that relator recover its costs in and about this proceeding laid out and expended.

All concur.