## Young, et al. v. Fiscal Court Trimble County, et al.

(Decided February 25, 1921).

### Appeal from Trimble Circuit Court.

1. Counties—Fiscal Management, Debt and Taxation—Power to Issue Bonds.—The limit of a bond issue under Ky. Const., sec. 157a, is determinable by the amount that can be raised by a levy of 20 cents on each $100.00 of the assessed property valuation at the time of the issuance and sale of the bonds and not at the time a vote authorizing said issue is taken.

2. Counties—Fiscal Management, Debt and Taxation—Power to Issue Bonds.—A vote in favor of a bond issue under Ky. Const., sec. 157a, does not of itself create an indebtedness as the debt is not incur-

red until the bonds are issued and sold, hence an election as to incurring indebtedness by the issue of bonds is not invalid merely because at the time of the election the debt limit has been exceeded where same is not exceeded at the time the bonds are actually issued and sold.

3   Counties—Issue of Bonds for Road Purposes—Deferring Issuance.—In an election held in May, 1916, the county was authorized to issue bonds to the amount of $90,000.00 for road purposes under Ky. Const., sec. 157a, but it was deemed expedient and advisable by the county officials at the time to issue only one-half of the amount authorized. More than four years after the vote was taken the county decided to issue additional bonds for road and bridge purposes under the previous election: Held, that the circumstances presented by the record were such that the county officers were justified in deferring the issuance of the additional bonds for period stated.

CLAUDE B. TERRELL for appellants.

EUGENE MOSLEY and CHAS. CARROLL for appellees.

WINSLOW & HOWE, Amici Curiae.

OPINION OF THE COURT BY JUDGE QUIN—Affirming.

The parties to this appeal filed an agreed statement of facts in the court below in which it is stipulated that appellants are property owners in Trimble county; that appellees were fiscal officers of the county; that an election was properly ordered to be held in Trimble county on May 27, 1916, for the purpose of submitting to the voters in the county this question:

"Are you in favor of authorizing the fiscal court of Trimble county, Kentucky, to issue and sell $90,000 in bonds for the purpose of constructing and reconstructing the roads and bridges in said county?" that more than two-thirds of the voters at said election voted in favor of the authorization of said bond issue.

On September 2, 1916, according to an order of the fiscal court it was deemed advisable to issue only $45,000, or one-half of the authorized amount, and this was done and the denomination and maturity of the bonds fixed in said order; the bonds to bear interest at the rate of 5 per cent. per annum, all payable within thirty years from date.

A levy of 20 cents on each $100 of taxable property in the county was made in 1916, and in each subsequent year, for the purpose of paying the interest on said bonds so issued and sold, and to create a sinking fund for re-

deeming said bonds at maturity. It is further stated that the fiscal court can and, if necessary to pay the interest and create a sinking fund to redeem said bonds, will appropriate out of the tax levy for general purposes the sum of 14 cents on each $100 of the assessed value of property in the county. Other than the $45,000 there are no bonds outstanding against the county, and there is now in the sinking fund for the redemption of said first bond issue the sum of $15,000.

The assessed value of the property in the county from 1916 to 1921 inclusive is given in the agreed case.

It is further stated that the fiscal court is about to and will, unless prevented from so doing, issue and sell additional bonds to the amount of $23,000 to be used for the purpose of constructing and reconstructing bridges and roads in the county, the same being a part of the bond issue authorized by the election held May 27, 1916. All of said bonds, if issued, will mature and become due and payable within thirty years from date of same.

The legal point to be determined according to the stipulation involves the authority of the fiscal court to sell or issue the $23,000 of bonds.

Only two questions need to be considered: First, is the limit of the bond issue to be determined by the amount that can be raised at the time the vote is taken by a 20 cent levy, or is it to be determined by the amount that can be raised by such levy at the time of the issuance and sale of the bonds? Second, has the fiscal court, through its failure to issue the entire authorized amount, lost the right to issue bonds now that more than four years have elapsed since the vote was taken?

Upon submission to the lower court judgment was entered authorizing the issue of the additional bonds under the authority of the election held May 27, 1916, same to be issued and to mature at such time in legal limits as the fiscal court might determine, and to bear interest at the rate of 5 per cent per annum, payable semi-annually, the proceeds of said bonds to be used for the purpose of constructing and reconstructing the roads and bridges in Trimble county.

Authority for this bond issue is found in sec. 157a of the Constitution, which provides:

"The credit of the Commonwealth may be given, pledged or loaned to any county of the Commonwealth for public road purposes, and any county may be permit-

ted to incur an indebtedness in any amount fixed by the county, not in excess of five per centum of the value of the taxable property therein, for public road purposes in said county, provided said additional indebtedness is submitted to the voters of the county for their ratification or rejection at a special election held for said purpose, in such manner as may be provided by law and when any such indebtedness is incurred by any county said county may levy, in addition to the tax rate allowed under sec. 157 of the Constitution of Kentucky, an amount not exceeding twenty cents on the one hundred dollars of the assessed valuation of said county for the purpose of paying the interest on said indebtedness and providing a sinking fund for the payment of said indebtedness.''

From 1916 to 1921 there has been a decided increase in the assessed value of property in Trimble county. The authorized limit of 20 cents on each $100 on the 1916 valuation would not have netted an amount sufficient to pay the interest on the entire issue, but if the indebtedness is not created until the bonds are actually issued the amount derived from levies, based upon assessments subsequent to 1916, would seem ample to take care of the additional sum now sought to be issued, as well as the first issue.

It seems to be well settled that a vote in favor of a bond issue does not of itself create an indebtedness as the debt is not incurred until the bonds are issued and sold, therefore, an election as to incurring indebtedness by the issuance of bonds is not invalid merely because at the time of the election the debt limit has been exceeded, where the debt limit is not exceeded at the time of the issuance and sale of the bonds. McQuillen on Municipal Corporations, sec. 2232.

This is the view taken by this court. For instance, in Frost, etc. v. Central City, etc., 134 Ky. 433, 120 S. W. 367, a question was submitted to the voters of the city at an election held in November, 1908, as to whether the city should be empowered to issue $24,000 in bonds for the erection of two school buildings. The proposition carried. One of the objections urged in a suit filed by a citizen to enjoin the bond issue was that at the time of the election the city already had a bonded debt so great that under sec. 158 of the Constitution no additional indebtedness could be created. It appears that at the time of the election there was outstanding against the city $30,000 in water company bonds, but before the institution of the

action these had been paid off and cancelled, so that the city had no bonded indebtedness at the time suit was filed. With the water bonds paid off and discharged, the city had the authority to incur an indebtedness of $24,000. On the question of whether the indebtedness was created at the time of the election or at the time of the issuance of the bonds the court said:

"Clearly the election is only one of the steps necessary to be taken in order to legally create the indebtedness, and the indebtedness itself is not created until the bonds are sold. No good would result in holding that the election is void because at the time it was held the city could not under the Constitution have issued the bonds which the voters authorized. Every substantial good intended to be effectuated by the Constitution will be subserved by holding that the right to issue bonds is to be determined by the condition of the indebtedness of the municipality at the time the bonds are sold. The intention of the Constitution was to limit the aggregate amount of the bonded indebtedness of municipalities; and, when this is effectuated and the indebtedness kept within the prescribed limits, the whole intent of the framers of that instrument is subserved."

To same effect see City of Louisville v. Parsons, 150 Ky. 420, 150 S. W. 498. This case involved the liability of the city for expenses of an engineer employed to report upon the condition of the water company. The authorization for his employment was based upon a joint resolution by the general council, approved August, 1907, which directed that these expenses be paid out of the general purpose fund of the next ensuing fiscal year, beginning September 1, 1907. Had the city by the adoption of the resolution incurred the indebtedness therein contemplated the court held it would have been an attempt on the part of the council to create an indebtedness exceeding the income and revenue for the year in which the resolution was adopted, but that the adoption of the resolution did not create an indebtedness; this was not done until the employment provided for in the resolution was made and the employment was not made until after the beginning of the next fiscal year. The mere adoption of the resolution did not violate the constitutional provision.

In Bosworth v. City of Middlesboro, 190 Ky. 246, 227 S. W. 170, a like question was involved and in that case it is said that if the bonds were never sold or delivered no

indebtedness could or would be incurred on their account; that no contract of any kind would have been entered into sufficient to create an indebtedness until the sale and delivery of the bonds. See also Redding v. Esplen Borough, 207 Pa. St. 248; Thompson-Houston Electric Co. v. Newton, 42 Fed. 723; 28 Cyc. 1584.

Many conditions might arise to cause a postponement of the issuance and sale of an authorized issue of bonds. Later developments might prove it unwise, inexpedient or even unnecessary to float the full sum authorized. It may be the balance of the bonds would never be issued. Had the amount not exceeded the constitutional limit it is possible the county authorities could not have expended so large a sum of money at one time, and it would be folly to allow the proceeds of the entire issue to remain idle in the hands of the county treasurer or even on deposit in a bank at nominal interest. This would be poor business management, and a needless burden on the taxpayers.

We think the rule established by this and other courts a sound one, namely, that the vote of the electors does not create an existing indebtedness.

No debt is created until the bonds are issued and sold. The time of the actual issue of the bonds is the time for determining whether the debt limit is exceeded.

Our conclusion on the first of the two propositions raised by the appeal in reality disposes of the second, because if the fiscal court is not compelled to issue at one time the full amount of bonds authorized it necessarily follows that a reasonable time will be allowed within which to dispose of the remaining portion of the authorized issue.

The apparent inability of the county to immediately expend the proceeds of the entire issue; the fact that this country shortly after the vote was taken entered into the World War and that it became well nigh impossible to dispose of municipal bonds on a 5 per cent. basis, doubtless convinced the fiscal officers either that the exercise of a wise discretion rendered it advisable or the situation confronting them made it necessary that they defer any further attempt to issue or sell bonds until such time as conditions might change or present a more favorable market in which to dispose of the additional issue.

In Moller v. City of Galveston, 23 Tex. Civ. Ap. 695, 57 S. W. 1116, it was held that a delay of two years did

not invalidate an issue of sewer bonds. The circumstances considered we are not prepared to say such an unreasonable length of time has elapsed since the vote was taken as would invalidate the contemplated issue and sale of the $23,000 of bonds.

Mention is made in the briefs that it is the intention of the county authorities to use the proceeds of the bond issue to supplement an amount raised by private subscriptions from the citizens of Trimble county as the latter county's proportion in the construction of a federal-state aid road from Milton to Paducah. But this question is not here. It is not included in the stipulated facts, and, as stated by counsel for appellant, the only two questions involved on this appeal are those above given.

Satisfied as we are that the judgment of the lower court is correct the same will be and is accordingly affirmed.