FLEMING–STITZER ROAD BLDG. CO. et al. v. CHASTAIN et al. (No. 10113.)

(Court of Civil Appeals of Texas. Fort Worth. April 1, 1922.)

1. Injunction ⬤⟳26(1)—Prosecution of action not restrained where defendant can appeal.

Injunction is not a proper remedy to restrain the prosecution of an action where defendant in such action has a remedy by appeal.

2. Injunction ⬤⟳26(4) — Equity may enjoin bringing multiplicity of actions.

Equity may enjoin the bringing of separate suits to vex and harass defendant by a multi-

plicity of actions when plaintiffs' demands can all be disposed of in one suit.

3. Injunction ⬤⟳26(4)—Several actions enjoined only on showing that matters may be determined by one.

Before several actions at law will be enjoined in order that the controversies may be determined in a single suit, it must appear that the different suits may be determined by the settlement of one or more issues of law or fact common to them all.

4. Injunction ⬤⟳118(1) — Application must show right to relief.

An application for injunction should show affirmatively that applicant is entitled to the relief sought, and the petition must negative every reasonable inference that might be drawn from the facts stated which would justify refusal.

5. Evidence ⬤⟳474½—Fraud not proven by opinion evidence.

In an action to declare void a bond issue, where defendant sought to enjoin plaintiff from bringing the action, alleging that it was brought for the purpose of harassing defendants, opinion of witnesses that the suit was not brought in good faith and was brought for the purpose of hindering and delaying the building of roads was inadmissible.

6. Injunction ⬤⟳118(1)—Allegations of cross-action held insufficient to justify enjoining actions as intended to harass plaintiff.

In an action to declare a bond issue void, defendants' cross-action, alleging that they believed there was a concerted action by plaintiff acting with other parties who had filed suits, to prevent roadwork from going forward, and that plaintiffs were willing to sacrifice the roads and best interests of the citizens, and especially citizens residing along a named highway, and that by reason of such unwarranted acts asked injunction to prevent plaintiffs and other persons from harassing and filing unwarranted suits against defendants, held insufficient to justify injunction.

7. Counties ⬤⟳173(2)—Merely holding election authorizing bonds creates no debt against county.

The holding of an election authorizing the issuance of bonds does not create an indebtedness against a county, and in order to create the debt represented by bonds such bonds must be ordered issued, lithographed, approved by the Attorney General, registered by the Comptroller, etc., and sold.

8. Counties ⬤⟳183(1)—Where bond issue authorized by election county may issue as needed.

A county, when authorized by election to issue bonds, may issue them as needed within a reasonable time.

9. Counties ⬤⟳173(2)—Bond issue for roads held unauthorized by constitutional or statutory limitation.

Where an election held August 21, 1919, authorizing bond issue for roads was carried by a two-thirds vote, and in 1920, when the assessed value of real property was $22,558,195,

and of all property $55,134,958, an issue of $800,000 of the bonds in 1920 was not in violation of Const. art. 3, § 52, or article 8, § 9, or of any statute, including Special Road Law of Eastland County, § 20, limiting bond issues, and in 1921, when the total assessed value of all property was more than $57,000,000, an issue of $4,500,000 of bonds was not in violation of article 3, § 52, nor Rev. St. art. 613.

**10. Constitutional law ⚖=>15—Statutes ⚖=>224 —Different provisions or articles construed to give effect to both.**

If two provisions of the Constitution or two articles of the statutes can reasonably be so construed as to leave both of them effective, such construction should be adopted.

Appeal from District Court, Eastland County; W. R. Chapman, Special Judge.

Suit by O. G. Chastain and others against the Fleming-Stitzer Road Building Company and others. From judgment rendered, defendant named and G. A. Davisson, as owner and individually, appeal. Affirmed.

Conner & McRae, of Eastland, Butts & Wright, of Cisso, and Burkett & Orr, of Eastland, for appellants.

O. F. Chastain, Frank Judkins and C. P. Chastain, all of Eastland, for appellees.

BUCK, J. This suit was instituted by Chastain, Judkins & Chastain against Fleming-Stitzer Road Building Company, owned by G. A. Davisson, and G. A. Davisson individually, C. R. Starnes, county judge of Eastland county, E. H. Webb, J. W. Camp, M. G. Robertson, and Henry Stubblefield, county commissioners, and John Hart, tax collector of Eastland county, alleging that the county commissioners had called an election on August 21, 1919, for the purpose of determing whether or not Eastland county should authorize the commissioners' court to issue road bonds of Eastland county to an amount not exceeding $4,500,000 for the purpose of building public roads in said county; that said election was duly and legally held on the 27 day of September, 1919, and in due time thereafter, as required by law, the commissioners' court of said county canvassed the returns of said election and declared said bonds carried by a two-thirds vote; that since said time the commissioners' court of Eastland county had caused to be issued and sold bonds authorized by said election to the extent of $2,500,000, and had issued the remaining $2,000,000 provided for in said bond election, and were about to sell the same and will sell the same unless restrained from doing so; that said bonds run for 40 years from date of issuance and bear 5½ per cent. interest; and that in order to provide for a sinking fund to pay same at maturity the commissioners' court of Eastland county will have to levy a tax to raise

approximately $360,000 a year for the next 40 years; that said bond issue is illegal, excessive, unconstitutional, and void, and is in contravention of article 3, § 52, of the state Constitution, which prohibits any county from issuing bonds to an amount in excess of one-fourth of the assessed valuation of the real property of such county. Plaintiffs alleged that the real estate values of Eastland county in 1919 aggregated the sum of $11,854,030, and therefore did not authorize a bond in excess of $3,000,000. They further alleged that said bond issue was in contravention of article 8, § 9, of the Constitution of this state, which provides that no county shall issue bonds for road purposes in a greater amount than that a tax of 15 cents on the $100 valuation will pay the annual interest and provide a sinking fund sufficient to pay said bonds at maturity. They further alleged that the total assessed valuation of the property in Eastland county in 1919 was approximately the sum of $24,000,000; in 1920 it was approximately $55,000,000; in 1921 it was approximately $60,000,000; and that said largest valuation would not authorize a bond issue for road purposes in excess of $1,000,000. They further alleged that said bond issue was illegal and void because issued in contravention of the special road law of Eastland county (Sp. Laws 1903, c. 8, § 20), which provides that no bonds shall be issued for a greater amount than that a levy of 15 cents on the $100 property valuation will yield sufficient to pay the interest on the bonds as it accrues and create a sinking fund sufficient to pay the principal of the bonds at maturity; that said bond issue was illegal and void because in direct contravention of title 18, c. 1, art. 613, of the revised Civil Statutes of Texas. Further allegations were made as to alleged fraud on the part of the commissioners' court and of the tax assessor in assessing the valuation of property in Eastland county above what was its true value. Plaintiffs prayed for a cancellation of all of said bonds in excess of the amount alleged to be authorized by law, and that the tax collector of said county and Eastland county as a municipal corporation be enjoined from levying, assessing, or collecting any taxes from plaintiffs to pay interest or create a sinking fund for such bonds so found to be illegal.

The Fleming-Stitzer Road Building Company and G. A. Davisson individually, and Eastland county, through its commissioners' court, and John Hart, tax collector, answered at length; said answer containing special exceptions directed to plaintiffs' petition and certain defenses which will be hereinafter discussed. Other parties intervened. but, as they were disposed of in the judgment, and no complaint is made in this appeal by

⚖=>For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

them, no further notice will be taken of such other parties.

The cause was tried before the court without the intervention of a jury, and certain of the exceptions tendered by parties plaintiff and parties defendant were overruled, and other exceptions were sustained. Thereupon the court rendered judgment that plaintiffs were not entitled to recover against the defendants, and that defendants Fleming-Stitzer Road Building Company and G. A. Davisson were not entitled to recover on their cross-action against plaintiffs, and that defendants Eastland county and the commissioners' court of Eastland county were not entitled to recover on their cross-action wherein they sought for an injunction against the plaintiffs to prevent their bringing any further suits or actions at law or in equity in any way interfering with the issuance and sale of said bonds.

The court filed his conclusions of law, in which he found that the bonds sought to be attacked had been duly approved by the Attorney General and registered by the Comptroller, and that under article 625 of the Revised Statutes said bonds after having been so certified to and approved and registered are not subject to attack, except for forgery or fraud, and on the ground that such bonds as may be issued are in excess of the limit fixed by .the Constitution or contrary to its provisions, and that the fraud charged in said petition does not raise the question as to the invalidity of said bonds on account of any fraud with reference to the voting, issuance, approval, registration, or sale of said bonds; that the fraud charged in said pleading raised a collateral issue, and that the judgments and orders of the commissioners' court in approving the assessment rolls of Eastland county are final and binding in so far as this proceeding is concerned, and cannot be attacked in any manner except in the manner provided for by law; that the plaintiffs are estopped from pleading the fraud of the commissioners' court in the matter of passing upon the assessed values of the taxable properties of Eastland county, in that the commissioners' court could not in law attack the enforcement of the collection of said bonds by alleging or proving that they themselves were guilty of fraud in the matter of increasing the assessed property values of Eastland county, and that, if the commissioners' court could not lawfully take advantage of their own wrong, if any, the plaintiffs would likewise be prevented from doing so; that the allegations in plaintiffs' first amended petition as to the question of fraud are insufficient to entitle them to any relief by reason thereof.

From this judgment the defendants the Fleming-Stitzer Road Building Company and G. A. Davisson, as owner and individually, have appealed. The appellants and the commissioners' court of Eastland county and Eastland county have filed briefs in this court. The appellees Chastain, Judkins & Chastain have filed no briefs. The appellants ask that the judgment of the trial court be affirmed, and the appellees Eastland county and the commissioners' court of Eastland county ask that the judgment be affirmed as to the holding that said bonds so ordered are not in excess of the constitutional or statutory limitations, but that the judgment be reversed and remanded in so far as their prayer for an injunction against the plaintiffs is concerned.

The commissioners' court and Eastland county in their assignments allege error in the trial court in refusing to permit these defendants to prove by witnesses that this suit was instituted by the plaintiffs in this cause for the express purpose of harassing these defendants and delaying the road work of Eastland county, Tex., and in refusing these defendants the right to introduce proof upon their plea and prayer for injunction, because such plea is and was an equitable plea, and testimony should have been heard upon same in order for the court to arrive at whether or not it would be equitable to grant the injunctive relief prayed for.

[1-4] It has been held that injunction is not a proper remedy where the party plaintiff seeks to restrain the prosecution of an action where the party defendant in such action has a remedy by appeal. Chadoin v. Magee, 20 Tex. 476; Smith v. Ryan, 20 Tex. 662; Gibson v. Moore, 22 Tex. 611. But the power of a court of equity to enjoin the bringing of separate suits to vex and harass the defendant by a multiplicity of actions, when plaintiffs' demands ,can all be disposed of in one suit, has been recognized by a number of authorities. See Railway Co. v. Dowe, 70 Tex. 5, 7 S. W. 368; Lumber Co. v. Railway Co. (Tex. Civ. App.) 178 S. W. 725; Pom. Eq. Jur. (3 Ed.) § 1360; Simpson v. McGuirk (Tex. Civ. App.) 194 S. W. 979. But, before several actions at law will be enjoined in order that the controversies may be determined in a single suit, it must appear that the different suits may be determined by the settlement of one or more issues of law or of fact common to them all. Railway Co. v. Grocery Co. (Tex. Civ. App.) 162 S. W. 1174. But an application for a writ of injunction should show affirmatively that the applicant is clearly entitled to the relief sought, and in order to do this the petition must negative every reasonable inference that might be drawn from the facts stated which would justify the refusal of the writ. Gillis v. Rosenheimer, 64 Tex. 243; Nussbaum v. Bell County, 97 Tex. 86, 76 S. W. 432.

[5] In the bill of exceptions of Eastland county and the commissioners' court with reference to this evidence tendered it is

said that the defendants tendered testimony of certain witnesses as to the extent of the injury done to the roads of Eastland county caused by the constant filing of suits in order to hinder and delay the work on said roads, and "offered to prove that in the opinion of said defendants that said suit was not brought in good faith and was brought for the purpose of hindering and delaying the building of the roads in Eastland county." The witnesses offered were the county judge and three of the commissioners. We doubt if this testimony, showing the opinion of the witnesses, was admissible to establish the allegations of the cross-action of the defendants and the commissioners' court against the plaintiffs, in any event. The defendants above named could not have proven that the plaintiffs were acting fraudulently in bringing suits to prevent the sale of the road bonds by showing that the witnesses believed that they were doing so. They could have testified as to facts and as to statements made by the plaintiffs which tended to show that they were acting fraudulently in bringing the suits. The court only, acting without a jury, was authorized to determine whether or not such fraud had been proven.

[6] Moreover, the defendants Eastland county and the commissioners' court alleged:

That they believed that "there is a concerted action upon the part of the plaintiffs in this cause, acting together with other parties who have filed previous suits, to prevent the roadwork of Eastland county from going forward at all hazards, and they are willing to sacrifice the roads of Eastland county, interests of Eastland county, and the best interests of the citizenship of Eastland county, and especially citizens residing along what is known as the Bankhead highway, and by reason of such unwarranted acts this defendant respectfully shows to the court that this court should issue its most gracious writ of injunction to prevent the plaintiffs and all other persons with whom they may be acting from harassing and filing unwarranted suits against this defendant and the commissioners' court of Eastland county," etc.

We do not believe that the pleadings of the defendants named, as above quoted, sufficiently allege a state of facts justifying the trial court in granting the injunction prayed for, or at least as would justify this court in reversing the judgment of the trial court in this respect. Hence, all assignments of the appellants named are overruled.

No question is raised in the agreed statement of facts as to any illegality in the election held on August 21, 1919, nor as to the compliance with the requirements by the commissioners' court and others of the law touching the issuance of bonds. The only question presented is whether any of these bonds were in excess of the limitations prescribed by the Constitution and the statutes of this state. It is further agreed that said bonds were issued in series of C, D, E, F, and G, that prior to said election bond issues of series A and B had been duly and lawfully made in road districts Nos. 1 and 2, and that series A and B were issued in the aggregate amount of $180,000, and that the bond election of September 27, 1919, was held and the bonds issued for the purpose of refunding said road district bonds, as well as for the purpose of the construction, maintenance, and operation of macadamized, graveled, or paved roads and turnpikes, or in aid thereof, throughout such county, and that the commissioners' court was authorized to issue said bonds serially or otherwise, to run not to exceed 40 years from their date, and to bear interest at the rate of 5½ per cent. per annum. It is further agreed that no bonds were actually ordered issued by the commissioners' court, printed or lithographed and approved by the Attorney General, and registered by the Comptroller until the year 1920, when series C was so duly approved and registered, and during that year $50,000, all of series B, was used in refunding road district bonds No. 2, aggregating the sum of $50,000, and that all (presumably $1,000,000 worth) of said series C was sold during the year 1920, except 250 bonds of that series, aggregating the sum of $250,000 and said $250,000 of series C were sold during the month of January, 1921; that February 28, 1921, the commissioners' court ordered issued series D, aggregating $1,000,000 of bonds, and that during said year the bonds of said series D were duly approved by the Attorney General and registered by the Comptroller and thereafter sold; that in July, 1921, series E were duly ordered issued by the commissioners' court and were approved by the Attorney General and registered by the Comptroller, and during that year $15,000 of them were sold and none others; that on August 23, 1921, series F of said bonds, aggregating $1,000,000 were duly ordered issued by the commissioners' court, approved by the Attorney General, and registered by the Comptroller; that on January 14, 1922, series G, aggregating $320,000 were duly ordered issued by the commissioners' court, approved by the Attorney General, and registered by the Comptroller; that during the year 1922 $326,000 of series E and $259,000 of series F were sold to the defendant Fleming-Stitzer Road Building Company, but final delivery of the same had not been fully consummated at the time of the trial. It is further agreed that the remaining bonds that have not been sold are now in the possession of the commissioners' court of Eastland county; that the commissioners' court of Eastland county during the year 1920 levied a tax rate of 40 cents on the $100 of assessed property values of Eastland county for the purpose of providing for the payment of interest and

a sinking fund to care for the bonds that had been issued, and that during the year 1921 a tax rate of 45 cents on the $100 property values in Eastland county was duly levied for a like purpose; that during the year 1922 a tax rate of 20 cents on the $100 value of taxable property was levied for such purposes to take care of the interest and sinking fund on series E, and a like amount for a like purpose on series F, and 5 cents was levied on the $100 valuation of taxable property of Eastland county for the purpose of taking care of the interest and sinking fund of series G. It is further agreed that during the years 1919, 1920, and 1921 the assessed value of all real property in Eastland county and the assessed value of all the property in Eastland county were as follows:

|  | Assessed Values of Real Property. | Assessed Values of All Property. |
|---|---|---|
| 1919 | $12,599,870.00 | $24,037,100.00 |
| 1920 | $22,558,195.00 | $55,134,958.00 |
| 1921 | $31,486,622.00 | $57,024,743.00 |

It is further agreed that series A of said bonds, aggregating the sum of $130,000, were ordered issued by the commissioners' court during the year 1920, but that said issue has never been approved by the Attorney General nor registered by the Comptroller, and that said series A were ordered issued for the purpose of refunding road district bond No. 1, but that said bond of said road district has never yet been returned or delivered back for cancellation.

[7] It is well established by authorities that the holding of an election authorizing the issuance of bonds does not create an indebtedness against the county; that, in order to create the debt represented by the bonds, such bonds must be ordered issued, lithographed, approved by the Attorney General, registered by the Comptroller, etc., and sold. City of Austin v. Valle (Tex. Civ. App.) 71 S. W. 414, writ denied; Cohen v. City of Houston (Tex. Civ. App.) 176 S. W. 809, writ refused; Young v. Fiscal Court, 190 Ky. 604, 227 S. W. 1009, by the Kentucky Court of Appeals; Rockwall County v. Roberts County, 103 Tex. 406, 128 S. W. 369, by the Supreme Court of this state; City of Laredo v. Looney, 108 Tex. 119, 185 S. W. 556, by the Supreme Court; Hidalgo County v. Davidson, Attorney General, 102 Tex. 539, 120 S. W. 849.

[8] By the same authorities it is held that a county or municipality, when authorized by an election to issue bonds, may issue them as needed within a reasonable time. In Young v. Fiscal Court, supra, it was held that a five-year delay, under the circumstances there shown, was not an unreasonable time for the issuance of all the bonds authorized by the election.

[9] It is shown by the agreed statement of facts that no bonds were issued during 1919.

Hence no debt was created by reason of this bond issue until 1920. At this time there were issued bonds in the amount of $50,000, all of series B, used in refunding the bonds of road district No. 2, and $750,000 worth of bonds of series C. These appear to be all of the bonds issued prior to 1921. Certainly the issue of $800,000 worth of bonds was not in violation of article 3, § 52, and article 8, § 9, of the Constitution, or of any of the statutes, including the special road law of Eastland county limiting bond issues. In 1921 the total assessed value of all property in Eastland county was $57,024,743, and the assessed value of the real property in said county for 1921 was $31,486,622. During 1921 there were ordered issued and sold $1,015,000 worth of bonds, which, together with the $800,000 ordered issued in 1920, make a total indebtedness of $1,815,000 road bond indebtedness authorized by this election. Such issue was not in violation of article 3, § 52 of the Constitution, limiting a county to the issuance of bonds or lending of its credit to exceed one-fourth of the assessed valuation of the real property of such county. We conclude that the bond issue in question is not limited by the provisions of article 8, § 9, of the Constitution nor by article 613, Revised Statutes. Article 613 says, in part:

"The total indebtedness of any county shall not be increased by any issue of bonds to a sum exceeding five per cent. of its said taxable values."

This article is part of the Acts of 1893. Article 8, § 9, of the Constitution was amended in 1907. This amendment did not change this section as passed in 1890 in any way affecting the matter now under consideration, the only change being the authorization of a tax "not exceeding fifteen cents to pay jurors." Under this section:

"The Legislature may also authorize an additional annual ad valorem tax to be levied and collected for the further maintenance of the public roads; provided that a majority of the qualified property tax paying voters of the county, voting at an election to be held for that purpose, shall vote such tax, not to exceed fifteen cents on the one hundred dollars valuation of the property subject to taxation in such county."

Article 3, §, 52, of the Constitution, reads in part as follows:

"The Legislature shall have no power to authorize any county * * * to lend its credit; * * * provided, however, that under legislative provision any county * * * upon a vote of a two-thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby, *in addition to all other debts* [emphasis ours] may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory

\* \* \* for the following purposes, to wit. \* \* \*

"(C) The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof."

· This section was declared adopted December 29, 1904, and was a radical change over the same section under the Constitution of 1876. The first law putting into effect the provisions of this section was the act of the Thirtieth Legislature (volume 13, Gammell's Laws, p. 249). Section 1 of this act became article 627 of the Revised Statutes, and it has never been changed by amendment. Section 5 of the act limited the amount of taxes to be levied to 15 cents on the $100 valuation. Acts of the Thirtieth Legislature, Regular Session, pp. 249 to 251. Sections 5 and 6 of this act were amended in 1919. Acts of the Thirty-First Legislature, Regular Session, p. 185. Section 5 under the 1909 amendment limited the tax to be levied to 25 cents on the $100 valuation of taxable property, but at the first called session of the Thirty-First Legislature both the acts of the Thirtieth Legislature and of the regular session of the Thirty-First Legislature were repealed. Acts of the Thirty-First Legislature, First Called Session, p. 271. Section 2 of this last-mentioned act became article 628 of the Revised Statutes, section 6 became article 634, and section 9 became article 641. By this last-named article "any county operating under a special road tax law may take advantage of any of the provisions of this subdivision." In no part of this act is there any limitation on the amount of road bonds to be issued, except that it must not exceed one-fourth of the assessed valuation of the real property in the county. In 1917 articles 628 and 632 were amended, and articles 637a, 637b, 637c, 637d, 637e, and 637f (Vernon's Ann. Civ. St. Supp. 1918, arts. 628, 632, 637a-637f) were added, but by these amendments no further limitation as to the amount of road bonds were suggested. Acts of the Thirty-Fifth Legislature, pp. 461 to 467. In 1919 other amendments were made, but no change as to amount of bonds or tax rate. Acts of First and Second Called Sessions of the Thirty-Sixth Legislature, pp. 89 to 95 (Vernon's Ann. Civ. St. Supp. 1922, arts. 637a-637c, 637g-637hh).

[10] By a well-recognized canon of construction, if two provisions of the Constitution or two articles of the statutes can reasonably be so construed as to leave both of them effective, such construction should be adopted. It appears plain to us that article 8, § 9, of the Constitution, and the acts of the Legislature under title 18, c. 1, Revised Statutes, are limited to bond elections required to be carried by only a majority vote of the qualified taxpaying voters; while article 3, § 52, of the Constitution, and title

18, c. 2, of the Statutes, has reference to bond elections required to be carried by a two-thirds vote. This construction permits both articles and the statutes thereunder to stand without conflict. It is admitted that the election in the instant case was carried by a two-thirds vote. ·

We conclude that even the $4,500,000 worth of bonds were authorized under the state of record as here shown.

All assignments are overruled, and the judgment is affirmed.