## Sparks v. Sparks, County Judge, et al.

June 5, 1945.

A. T. W. Manning and Alfred Holman for appellant.

John Lyttle, County Attorney, for appellees.

OPINION OF THE COURT BY JUDGE REES—Reversing.

At a special election held on December 23, 1919, the voters of Jackson county approved a bond issue of $125,000 to be used for the purpose of constructing and reconstructing public roads and bridges of the county. A citizen and taxpayer of the county instituted an action in the Jackson circuit court to enjoin the county judge and members of the fiscal court from issuing or selling any of the bonds on the ground that the election had not been properly advertised. The validity of the bond issue was upheld by the circuit court, and its judgment was affirmed by this court in Harrison v. Jackson County Fiscal Court, 197 Ky. 57, 245 S. W. 848. No bonds were issued until March 1, 1925, when 5 per cent. bonds in the principal amount of $75,000 were issued to provide funds to be contributed by Jackson county as its part of the cost of construction of the state project known as "The Bosworth Trail" through the county. The road is now designated and known as State Highway No. 21. The remainder of the bonds authorized by the electors at the 1919 election have not been issued. On April 10, 1945, the fiscal court of Jackson county adopted a resolution authorizing the issuance of the remaining $50,000 of the $125,000 bond issue voted at the 1919 election. The resolution recited that it is now necessary to issue the remainder of the bonds authorized by the electors in order to construct, maintain, and improve the roads of the county other than the arterial highways constructed and improved with the proceeds of the $75,000 principal amount of bonds dated March 1, 1925. The bonds are to bear interest at the rate of 3 per cent., and are to mature $2,000 on July 1 in each of the years 1948 to 1972, inclusive. All of the bonds issued on March 1, 1925, except $17,000 in principal amount, have been retired out of the proceeds of the 20c annual tax levied for that purpose, and there is in the county treasury a sufficient amount to pay off the unretired bonds as they mature. It is proposed to continue the 20c levy until the additional $50,000 bond issue is retired in 1972.

On April 28, 1945, L. H. Sparks, a citizen and taxpayer of Jackson county, suing for and on behalf of all other citizens and taxpayers of the county similarly situated, brought an action under the Declaratory Judgment Act against Milas Sparks, county judge, and the members of the fiscal court, to have determined the validity of the proposed bond issue. The petition merely set forth the foregoing facts, and concluded with these allegations:

"* * * there now exists a necessity for the construction and reconstruction of roads and bridges of Jackson County other than said State Highway No. 21, for which purpose it is now proposed by the said Fiscal Court of Jackson County to issue and sell the remaining $50,000 road and bridge bonds at 3%, as set out in said order of said Fiscal Court.

"Plaintiff says that it is the contention of various taxpayers of Jackson County similarly situated with this plaintiff, that because of the long lapse of time, the remaining $50,000 road and bridge bonds authorized at said election on December 23, 1919, cannot now be legally sold or issued, and that a genuine controversy exists on that subject between the taxpayers of Jackson County and its Fiscal Court, and this action is brought by this plaintiff for and on behalf of himself and all other taxpayers of Jackson County similarly situated, in order that this court may, by a declaratory judgment, fix and determine the right of the Fiscal Court to now issue the remaining $50,000 of said road and bridge bonds at 3%, in accordance with the provision of the aforesaid order of the Fiscal Court, and as to whether or not such bonds, when so issued, will constitute and be a valid obligation of Jackson County, and that the levy and collection of the twenty cent sinking fund tax may be continued for the purpose of creating a sinking fund for the retirement of said bonds and the payment of interest thereon."

The defendants in their answer admitted the allegations of the petition, and joined in the prayer for a declaration of the rights of the parties. The case was submitted on these pleadings, and the court adjudged that bonds in the principal amount of $50,000, being the unissued part of the bond issue authorized by the voters of Jackson county at the special election held December 23, 1919, may now be legally issued and sold in accord-

ance with the order of the fiscal court of Jackson county, and, when so issued, will constitute and be valid and binding obligations of the county. The plaintiff has appealed, and in his brief argues that the judgment should be affirmed. Appellees have adopted appellant's brief as their own. As said in appellant's brief, the sole question presented for decision is: "May the Fiscal Court now in 1945 authorize the $50,000 of Road and Bridge Bonds remaining unissued of a total principal amount of $125,000 of such bonds authorized to be issued by the electors of Jackson County at an election duly called and held in Jackson County on December 23, 1919?"

In Young v. Fiscal Court of Trimble County, 190 Ky. 604, 227 S. W. 1009, it was held that the fiscal court of a county is not compelled to issue at one time the full amount of the bonds authorized at a duly held election, and that a reasonable time will be allowed within which to dispose of the remaining portion after issuance and sale of another portion. One-half of the authorized bond issue was sold, a few months after the election, and more than 4 years thereafter the fiscal court proposed to issue and sell a part of the remaining one-half. It was held that the lapse of time between the issues was not unreasonable. In Hager v. Board of Education, 254 Ky. 791, 72 S. W. 2d 475, a bond issue of $500,000 for school purposes was authorized at an election held in November, 1929. $100,000 of the bonds were issued at once. On February 27, 1934, the Board of Education requested the city to pass the necessary ordinances to issue and sell another $103,000 of the authorized bond issue of 1929. It was held that the Board of Education was not precluded by the lapse of time from requiring the city to issue the bonds. In the course of the opinion the court said:

"It is the settled rule that a county or municipality is not required to issue all the bonds voted at an election at one time, but may issue them as needed and a delay in issuing a part or all of the bonds, at least for a reasonable time, does not bar the right to issue them when necessity arises."

In Runyon v. Simpson, 270 Ky. 646, 110 S. W. 2d 440, a lapse of nearly 8 years between the election authorizing a school bond issue and the proposed issue and sale of bonds, in addition to two previous issues, was held not an unreasonable delay. In Weathers v. Todd

County, 271 Ky. 172, 111 S. W. 2d 638, $300,000 of road and bridge bonds were authorized at an election held July 20, 1926. $283,000 of the bonds were issued at various times between the day of the election and July 1, 1931. On October 20, 1936, the fiscal court, by resolution, proposed to issue the remaining $17,000 of the bonds authorized at the 1926 election. A group of taxpayers sought to enjoin the issuance of the bonds on the ground, among others, that the fiscal court had abandoned its authority to issue the bonds by reason of the lapse of time between the last issue and the date of the proposed issue. It was held that the delay was not unreasonable. In Johnson v. Fiscal Court of Muhlenberg County, 272 Ky. 9, 113 S. W. 453, $500,000 of road and bridge bonds were authorized at an election held in August, 1926. During the years 1927 to 1935, inclusive, $436,000 of the bonds were sold. There were eight separate issues. In November, 1937, the fiscal court adopted a resolution providing for the issuance and sale of $37,000 of the remaining bonds which had been expressly allocated by the petition calling the election to the construction of a particular road. It was held that the delay in issuing the bonds was not unreasonable.

In all the cases dealing with the question, the court has said, or implied, that a county or municipality may issue voted bonds as needed within a reasonable time, but there does not seem to be any hard or fast rule as to what constitutes a reasonable time within which the bonds must be issued. So far as our investigation discloses, the greatest length of time between the election and the issuance of the bonds which has been held reasonable is 11 years in Johnson v. Fiscal Court of Muhlenberg County, supra. Time is not the only element to be considered in determining the reasonableness of the delay. Conditions may have so changed as to render the issuance of the bonds inequitable. Ordinarily the bond issue is voted with the intention that the bonds shall be sold and the proceeds applied to the purpose intended with reasonable promptness, and not with the intention that future generations shall both receive the benefits and bear the burdens. The bonds are voted in the light of conditions and needs as they then exist. When the $125,000 bond issue was authorized by the voters of Jackson county in 1919, the state was constructing roads under a plan wholly different from the plan now followed.

Then the State Highway Commission required the various counties to furnish a portion of the cost of construction of state projects, and in many counties bond issues were voted in order to obtain state highways and to relieve the counties of future maintenance charges. The petition in the case before us states only the bare facts heretofore recited, but it appears that the state has constructed the main arterial highways through the county, and that the proceeds of the proposed issue of bonds will be used to construct and improve the secondary roads. In the annotation in 135 A. L. R. 768, the cases dealing with the effect of delay after authorization by the voters on the issuance of bonds by a governmental unit are collected. The greatest delay held reasonable by the courts is 11 years in Johnson v. Fiscal Court, 272 Ky. 9, 113 S. W. 2d 453, and Stokes v. Montgomery, 203 Ala. 307, 82 So. 663. In the Stokes case a bond issue for a hospital was approved by the voters in 1908, and the Board of Commissioners of the city did not undertake to issue the bonds until 1919. It was held the delay was not unreasonable. In a later Alabama case, Fuller v. Knight, 241 Ala. 257, 2 So. 2d 605, 611, 135 A. L. R. 760, a delay of 27 years in issuing bonds in the amount of $40,000, the remainder of a $200,000 bond issue authorized by the voters of a county for the purpose of constructing public roads in the county, was held unreasonable. The court distinguished the case from the Stokes case, and, in the course of its opinion, said:

"After reviewing the authorities and considering the question before us in all its bearings, we are of the opinion that, the Bond Act of 1913 for Cullman County contemplated the issuance of bonds for the construction and improvement of the public roads of the county, a project to be accomplished as a continuous undertaking within a reasonable time for the benefit of the people of the county who ratified the issue of bonds at an election. Twenty-seven years have intervened. The electorate of the county has largely changed; an entire change of set up for highway construction, including State and Federal aid, has intervened. The fund from the proposed issue of $40,000 cannot now be used for the road improvement contemplated when they were authorized by vote of the people.

"In this regard, the case differs from the Stokes case, supra, and the bonds proposed are in reality three-year bonds, rather than thirty-year bonds. This emphasizes the intention to issue bonds for concurrent purposes, within such reasonable time as required to make contemplated improvements in the public roads for the benefit of the people voting the issue.

"We lay down no hard and fast rule on the question of time limit for such issues. We base our conclusion on the reasonable intendments in the case at hand."

In the present case more than 25 years have elapsed since the bonds were authorized. A new generation of voters and taxpayers are affected, and, as said in the Fuller case, "an entire change of set up for highway construction, including State and Federal aid, has intervened."

Section 159 of the Constitution provides that whenever a county is authorized to contract an indebtedness, it shall levy a tax sufficient to pay the interest and to create a sinking fund for the payment of the principal thereof within not more than 40 years from the time of contracting same. This section of the Constitution contemplates the liquidation of the indebtedness in large part by the voters who authorized the issue of bonds at an election, and in order to accomplish this purpose it is necessary to issue the bonds within a reasonable time after their authorization. All the surrounding facts and circumstances must be taken into consideration in determining what is a reasonable or unreasonable length of time. We are not prepared to say that any particular length of time, in itself, is unreasonable; but when many years have elapsed between the authorization and issuance of the bonds, the burden should be on those attempting to issue them to show valid reasons for the delay and that conditions have not changed to such an extent as to render the issuance of the bonds inequitable.

In view of the meager facts disclosed by the pleadings in the present case, the court should have adjudged the delay unreasonable and denied the county the authority to issue and sell the bonds in question.

Judgment is reversed.