## Sparks et al. v. Sparks, County Judge et al.

Feb. 12, 1946.

A. T. W. Manning and Alfred E. Holman for appellants.

John C. Little for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—Reversing.

This is a second appeal. See Sparks v. Sparks, Etc., 300 Ky. 392, 189 S. W. 2d 354. A reference will show that in December, 1919, a bond issue of $125,000 for road purposes was approved by the voters of Jackson County. The validity of the issue was upheld in Harrison v. Jackson County, 197 Ky. 57, 245 S. W. 848. In March, 1925, there was an issuance of $75,000 of five per cent bonds for the county's part of the construction of Bosworth Trail. On April 10, 1945, the fiscal court authorized issuance of the remainder to be used to construct and maintain other roads in the county, these to bear three per cent interest to be retired over a period of 25 years. The original twenty cent levy was continued to meet the payment of the proposed issue.

Appellant Sparks, and other taxpayers, sought to determine the validity of the proposed issue and continuation of the twenty cent levy. Our opinion sets out in detail the allegations of the petition and the answer of the county, which raised this question: "May the fiscal court now in 1945 authorize the issuance of the unissued total principal amount of the originally authorized issue?" Our opinion pointed out cases in which we had held a lapse of time between proposal and final issuance of the bonds or a portion was not unreasonable, the extreme limits of intervening time being around eleven years. We concluded that the mere lapse of time was not the only element to be considered, but pointed out other elements and conditions which might militate against

a delayed issuance. Our conclusion on the first appeal was based on reason and justice. We said [300 Ky. 392, 189 S. W. 2d 357], "In the present case more than 25 years have elapsed since the bonds were authorized. A new generation of voters and taxpayers are affected, and, as said in the Fuller case [Fuller v. Knight], (241 Ala. 257, 2 So. 2d [605], 611, 135 A. L. R. 760) 'an entire change of set up for highway construction, including State and Federal aid has intervened.'" We did not hold that any particular length of time in itself is unreasonable, "but when many years have elapsed between the authorization and issuance of the bonds, the burden should be on those attempting to issue them to show valid reasons for the delay, and that conditions have not changed to such an extent as to render the issuance of the bonds inequitable. In view of the meager facts disclosed by the pleadings in the present case, the court should have adjudged the delay unreasonable and denied the county the authority to issue and sell the bonds in question."

We reversed the judgment of the lower court which had approved the issuance, without directions. However when the mandate was issued it ordered a remand for proceedings not inconsistent with our opinion. Following its filing the fiscal court without objection filed an amended answer, in which they again set out the history leading up to the original issue, and undertook to meet the burden suggested. In substance they alleged that when the original bond issue was authorized there were no improved roads in any part of the county; that six years after the vote the Legislature included in its system of primary public roads "Bosworth Trail," leading through the county by way of McKee east and west, which had the effect of affording a reasonable means of travel into the Bluegrass sections of the State, allowing comfortable travel and business intercourses with the citizens of various counties. It was thought at the time that $75,000 would be all that was necessary to construct Bosworth Trail, which was the only approved primary system at that time.

They said, having in mind future possibilities and necessities for reasonable means of travel, they decided to hold the remainder of the bonds in reserve until conditions would afford an opportunity for its judicious use in the construction and improvement of other roads

of the county tributary to Bosworth Trail. This did not appear to exist until the time of the 1945 resolution; that there intervened some four or more years of war and six years of business and financial depression between the time of completion of Bosworth Trail and the instant resolution; that during these periods it did not appear advisable to undertake issuance of the bonds or make effort to improve its roads or highways, and no opportunity presented itself so to do until the date of the resolution, and in their discretion they had postponed further issuance, and held them in reserve.

The court construed these reasons as justifying the delay, and they also considered the desires and wishes of the taxpayers and voters of Jackson County, who by large majority had authorized the original issue, and acted with the overwhelming majority and wish of the taxpayers in authorizing the present issue.

They allege that at the present time there is a real opportunity to use the proceeds of the proposed issue advantageously in connection with such funds as may be available from State and Federal sources, thus giving and extending a great benefit to the citizens of Jackson County far in excess of the proceeds from the proposed issue; that when the resolution was passed and since there has been no evidence of protest or opposition to the resolution. This proceeding, all the way through was amicable; so much so that when the amended answer was filed there was no sort of pleading interposed, and the chancellor in a lengthy opinion concluded that the reasons set out in the answer were sufficient to meet the suggestions in our recent opinion and adjudged the delayed issue valid.

The court finds itself unable to hold that there has been sufficient showing to authorize the issuance. There are some conclusions which might be persuasive if they were based on facts which had been or even might be established; one is, that the great majority of the citizens approved the resolution. We cannot see how they had opportunity to approve or disapprove. There was no notice of the proposal to adopt the resolution as far as the record shows, and we can conceive no better or other way to obtain approval than by submitting the question to the voters.

If we deemed it necessary to enter into extended

argument on the question we might do so, giving numerous reasons why it would be unjust and unfair to the citizens to hold them to an indebtedness of $50,000 without a voice, or to hold them to the exaction of a levy of twenty cents over a period of twenty years, when it might develop that a levy of half that amount would be sufficient, or a levy of the limit to extend over a shorter period, having in view the fact that rates of interest are now much lower than in 1919. We do not consider that the alleged depression, which came to an end in 1934, had great effect, but if so there intervened a considerable period before we became involved in war, and no good reason is shown for the interim delay.

It is not pointed out in the pleadings, but reference to a recent road map will show that since the Bosworth Trail was constructed there has been another highway project constructed leading from McKee in Jackson County, southwest to Livingston, and still another State project through the southern portion of the county, all constructed in later years. However, the strongest point, in addition to the long lapse of time and the radical change in the plans for building and maintaining highways, was the fact that the retirement of the bonds by the continued levy of the maximum tax would have to be met by a new generation who had no voice in the election 27 years ago. We may take judicial knowledge of the Federal census. In 1920 the population of Jackson County was something over 11,000; In 1940 this had increased almost 50 per cent, to a population of more than 16,000. It would be unfair to a great number of the present population to impose upon the citizens a debt even of $50,000, with a 25 year tax of the constitutional limit, without giving a fair opportunity to express their present views.

Without further comment we are compelled to hold that it is not shown by the amendment that "conditions have not changed to such an extent as to render the issuance of bonds inequitable." The converse is true, hence we must again reverse the judgment with directions to set it aside and enter one holding the proposed issue invalid.