## QUAID *v.* CITY OF DETROIT.

1. MUNICIPAL CORPORATIONS—AUTHORITY TO ISSUE BONDS—ISSUANCE—LAPSE OF TIME.

    A mere lapse of time between electoral authorization and issuance of bonds does not in and of itself show a forfeiture or abandonment of the right to issue bonds duly·approved by the electors.

2. SAME—BONDS—ELECTIONS—ISSUANCE—LAPSE OF TIME.

    Where city charter provides that the authority to issue and sell bonds approved by the electors shall continue until revoked by the electors, and there was a lapse of 19 years between authorization by electors of public improvement bonds and authorization by council of issuance of balance of such bonds, the court will not substitute its judgment for that of the council as to when the bonds will be issued and the improvements made, after the approval by the electors, especially where city was prevented from issuing the bonds for some 17 years by conditions beyond its control, territorial and corporate limits remain the same and purpose of the present sale was same as originally authorized and there was no abuse of discretion or fraud shown (Detroit Charter, title 6, chap. 5, § 22).

3. CONSTITUTIONAL LAW — AMENDMENT — ELECTIONS — MUNICIPAL CORPORATIONS.

    An amendment to the Constitution which varies the qualifications of persons entitled to vote for the direct expenditure of public funds or the issue of bonds which is plainly prospective in operation would not invalidate an·election held prior to the effective date of the amendment, at which approval for the issuance of public improvement bonds had been given that was valid when held (Const. 1908, art. 3, § 4, as amended in 1932).

4. COSTS—PUBLIC QUESTION—MUNICIPAL CORPORATIONS—BONDS.

> No costs are allowed in friendly suit to determine validity of bonds issued some 19 years after authorization by electorate had been given, a public question being involved.

Appeal from Wayne; Brennan (John V.), J. Submitted September 30, 1947. (Docket No. 76, Calendar No. 43,846.) Decided December 3, 1947.

Bill by Robert S. Quaid and wife against City of Detroit and others to restrain issuance of bonds. Decree for defendants. Plaintiffs appeal. Affirmed.

*Helen W. Miller,* for plaintiff.

*William E. Dowling,* Corporation Counsel, and *Paul T. Dwyer,* Chief Assistant Corporation Counsel, for defendants.

BOYLES, J.    Plaintiffs filed this bill of complaint in the circuit court for Wayne county for a declaration of rights, challenging the legality of a certain proposed issue of sewer and drain bonds by the city of Detroit. The circuit judge upheld the validity of the bonds as against the claims of illegality asserted by plaintiffs and from a decree entered to that effect plaintiffs appeal.

The two questions raised on the appeal are as follows:

" (1) Is an approval of public improvement bonds, voted by the Detroit electors in 1928, invalidated by failure for 19 years thereafter to issue said bonds?

" (2) Does a change in the qualifications of electors who may vote on the issuance of public improvement bonds, invalidate an approval given before the change?"

Both of these questions were answered in the negative by the circuit judge. The facts, as stipulated, may be summarized as follows:

At an election held April 2, 1928, the electors of the city of Detroit approved the issuance of $30,000,000 public improvement bonds, pledging the full faith and credit of the city for payment, to finance the construction of sewers. From time to time thereafter, the city sold several issues of these bonds totaling $21,263,000. On June 24, 1947, the common council authorized the issuance of the balance, $8,737,000. Plaintiffs, as taxpayers, started this case against the city and certain of its officers, obviously a friendly suit, to obtain a declaratory decree for the purpose of determining the validity of the proposed issue. No objection was raised, to the effect that no actual controversy existed. The principal question raised was that the proposed issue would be invalid for the reason that the approval of the electors given 19 years earlier had, by lapse of time, been impliedly revoked.

The defendants' answer denied that any revocation could be implied from the lapse of time since the delay in issuance was caused by conditions beyond the control of the city and since the sewer projects proposed to be constructed were the same as those which were proposed in 1928.

It is agreed that there has been no revocation by vote of the electors and that no question of revocation has ever been submitted by the council or initiated by the voters. It is further agreed that the issuance of the full amount of bonds authorized by the electors has been delayed by the following circumstances:

(1) By 1932 the city had reached and exceeded its bond and debt limitation. It is only within the last six months that a margin was established within

which the city might issue the balance of these sewer bonds;

(2) The city experienced large tax delinquencies and high welfare costs beginning in 1932 and continuing for several years; the city was unable to meet its obligations and a refunding program was put into effect and not consummated until 1941;

(3) That in addition to the aforesaid financial stringency and the inability of the city to market bonds and provide for their payment, the market for city bonds was limited by the addition to the State Constitution in 1932 of article 10, § 21, which made questionable the power of cities to levy taxes without limitation for the payment of bonded indebtedness. By the decision of this Court in *City of Hazel Park* v. *Municipal Finance Commission* (April 17, 1947), 317 Mich. 582, this limitation has been held not to apply;

(4) That the territorial boundaries of the city are today identical with those of 1928, that the sewers now to be constructed are the same as those projected in 1928, and that the population increase of the city is the natural increase to be expected during such a period.

The questions involved will be considered separately. (1) Does the delay in issuing said bonds for 19 years after approval by the electors now invalidate the issue?

The charter of the city of Detroit, as last amended April 4, 1921, effective April 16, 1921, in title 6, chap. 5, § 22, provides:

"Authority to issue and sell bonds heretofore or hereafter approved by the electors shall continue until revoked by the electors."

The above provision has not since been repealed or amended. Our attention has not been directed

to any statute or charter provision specifying or limiting the time, after the voted authorization, within which such bonds must be sold, or to any attempt upon the part of either the clectorate or the common council of the city of Detroit, as evidenced by any vote, resolution, ordinance or initiatory action, to expressly revoke the authority to issue said bonds.

The effect of a lapse of time between approval of a bond issue by the electors and the issuance of the bonds has been before this Court in *Board of Education of Traverse City* v. *Straub,* 182 Mich. 665, although in that case the delay was only one year. Under the circumstances of the case the validity of certain school bonds was upheld, as follows (p. 673) :

"Another question presented relates to the matter of delay in issuing these bonds. They were voted in April, 1913, and issued for signature in April, 1914. This question was suggested by respondent in the case of *Public Schools of the City of Muskegon* v. *Smith, supra* (173 Mich. 570), but was not passed upon. In the instant case it appears that relator, within 30 days after it was authorized to issue bonds for the purposes mentioned, let a contract for the construction of this school building, and that the same had proceeded almost to completion at the time the bonds were issued and presented to respondent for his signature. A necessary inference would be that these bonds were not issued until needed. We do not find in this delay any reason for criticising relator. On the contrary, it would seem commendable that this board was businesslike in saving to the school district as much interest as possible upon this considerable sum of money."

The precise question, under varying circumstances and different lengths of time for the delay, has been before the courts in other jurisdictions on numerous

occasions. Courts generally hold that the effect of the lapse of time depends on the facts and circumstances of the case, as to whether or not the circumstances indicate a subsisting approval, or indicate abandonment or revocation. If the objects. to be served are the same, if there has been no exceptional change in the physical setup of the community, the courts incline to a finding that the lapse of time has not invalidated the electors' approval, and especially is this true if the excuses offered for the delay are impressive. When the same project is to be financed, when the background is not unduly modified, and the delay is not unreasonable, courts as a rule uphold the vitality of the electors' approval.

The rule is established by weight of authority that a mere lapse of time between authorization and issuance does not in and of itself show a forfeiture or abandonment of the right to issue bonds duly approved by the electors. Furthermore, as hereinbefore stated, the Detroit city charter provides that the authority to issue and sell bonds approved by the electors shall continue until revoked by the electors. Cases in other jurisdictions hold that if there are extenuating circumstances or facts justifying delay and no abuse of discretion or fraud is shown, the court will not substitute its judgment for that of the governing body of the city as to when the bonds will be issued and the improvements made, after the approval by the electors. *Fleming-Stitzer Road Building Co.* v. *Chastain* (Tex. Civ. App.), 241 S. W. 619; *In re Verde River Irrigation & Power District,* 37 Ariz. 580 (296 Pac. 804); *Hager* v. *Board of Education of City of Ashland,* 254 Ky. 791 (72 S. W. [2d] 475); *Stokes* v. *City of Montgomery,* 203 Ala. 307 (82 South. 663); *State, ex rel. Boynton, Attorney General,* v. *City of Topeka,* 141

Kan. 309 (41 Pac. [2d] 260); *Nall* v. *City of Eliza-bethtown,* 200 Ky. 321 (254 S. W. 893); *City of Dayton* v. *Board of Education of City of Dayton,* 201 Ky. 566 (257 S. W. 1021); *Sutherland* v. *Board of Education of City of Corbin,* 209 Ky. 351 (272 S. W. 887); *Hager* v. *Cisco,* 256 Ky. 708 (76 S. W. [2d] 614); *Jonson* v. *Fiscal Court of Muhlenberg County,* 272 Ky. 9 (113 S. W. [2d] 453); *State, ex rel. City of Carthage,* v. *Gordon,* 217 Mo. 103 (116 S. W. 1099); *Robinson* v. *Askew,* 129 S. C. 188 (123 S. E. 822); *Miller* v. *School District No. 3 in Carbon County,* 5 Wyo. 217 (39 Pac. 879); *Young* v. *Fiscal Court, Trimble County,* 190 Ky. 604 (227 S. W. 1009); *Arkansas-Missouri Power Corp.* v. *City of Kennett,* 348 Mo. 1108 (156 S. W. [2d] 913); *Covington* v. *McInnis* (1928), 144 S. C. 391 (142 S. E. 650); *Pomeroy* v. *Gray,* 172 Ga. 737 (158 S. E. 568); *Missouri Electric Power Co.* v. *Smith,* 348 Mo. 738 (155 S. W. [2d] 113); *McNichols* v. *City and County of Denver,* 101 Col. 316 (74 Pac. [2d] 99); *City of Houston* v. *McCraw,* 131 Tex. 127 (113 S. W. [2d] 1215); *Weathers* v. *Todd County,* 271 Ky. 172 (111 S. W. [2d] 638).

In nine of the above cases the lapse of time between the authorization and the date of the issuance was seven or more years, although in none of the above cases do we find a situation where such lapse of time was as much as 19 years as in the case at bar. In many cases the lapse was less than five years. On the other hand, in none of the adjudicated cases do we find any charter or statutory provision, as in this case, to the effect that the authority to issue and sell the bonds approved by the electors shall continue until revoked by the electors.

The factual background plainly distinguishes the comparatively few cases wherein it has been held that lapse of time prevented the original authorization from being invoked to validate a late issue of

the bonds. Instances of such situations are found in *Fuller* v. *Knight,* 241 Ala. 257 (2 South. [2d] 605, 135 A. L. R. 760); *Sparks* v. *Sparks,* 300 Ky. 392 (189 S. W. [2d] 354), s. c. 301 Ky. 576 (192 S. W. [2d] 724); *Bremerton Municipal League* v. *City of Bremerton,* 13 Wash. (2d) 238 (124 Pac. [2d] 798).

In the case at bar, it is conceded that the city was prevented from issuing the bonds here in question from 1932 until 1945 by conditions beyond its control, that the authority to issue said bonds had not been revoked, that the territorial and corporate limits of the city were the same as in 1928, that it had been considered by the city authorities that the issue was prevented by overall debt limitations imposed by statute and city charter, that the purpose of the present bond sale was the same as originally authorized, that the proceeds were to be used as originally proposed, and that there was no abuse of discretion or fraud shown. Under these conditions, we conclude that the delay in issuance of the bonds does not invalidate the approval by the electors.

(2) Admittedly there has been a change in the qualifications of electors who may vote on the issuance of public improvement bonds, since the original election in 1928 at which the issue was approved. At that time the Michigan Constitution (1908), art. 3, § 4, provided:

"Whenever any question is submitted to a vote of the electors which involves the direct expenditure of public money or the issue of bonds, every woman having the qualifications of male electors who has property assessed for taxes in any part of the district or territory to be affected by the result of such election shall be entitled to vote thereon."

This was amended in 1932 to provide as follows:

"Whenever any question is submitted to a vote of the electors which involves the direct expenditure of public money, or the issue of bonds, only such persons having the qualifications of electors who have property assessed for taxes in any part of the district or territory to be affected by the result of such election or the lawful husbands or wives of such persons shall be entitled to vote thereon."

It is plain from a reading of this section that it is prospective in operation. It declares who *shall be* entitled to vote thereon, whenever any question is submitted to a vote of the electors which involves the direct expenditure of public money or the issue of bonds. It is impossible to read into the 1932 amendment the construction claimed for it by appellants, that it *invalidates* all such elections held prior to the effective date of the amendment because at the time of such election certain persons (although *then* not entitled to vote) were given the right to vote at later elections, from and after November 8, 1932, the effective date of the amendment. The change in the law after the 1928 election, as to the qualifications of electors, does not invalidate the election which was valid when held. *Common Council of the City of Detroit* v. *Engel,* 207 Mich. 106; *Thompson* v. *Harnett County,* 212 N. C. 214 (193 S. E. 158); *Weinhagen* v. *City of Herrin,* 305 Ill. App. 158 (26 N. E. [2d] 525); *Link* v. *Karb,* 89 Ohio St. 326 (104 N. E. 632).

Under the circumstances here agreed to by counsel, we conclude that the proposed bond issue is valid as against the objections asserted by appellants. The decree is affirmed, but without costs, as a public question is involved.

Carr, C. J., and Butzel, Bushnell, Sharpe, Reid, North, and Dethmers, JJ., concurred.